CITY OF APALACHICOLA, APPELLANT, vs. LEWIS CURTIS AND OTHERS, TRUSTEES, DIRECTORS AND RECEIVERS OF THE APALACHICOLA LAND COMPANY, APPELLEES.

1. On the application for an injunction, a Chancellor may go into the consideration of the merits as disclosed in the bill, and which are intrinsic and dependent upon its express allegations and charges.

2. On a motion for an injunction, the Court will not commit itself to points or questions that may arise at the final hearing.

3. A judgment in ejectment is conclusive against the defendant for all profits which have accrued since the date of the demise, stated in the declaration in ejectment, but if the plaintiff sues for any *antecedent profits*, the defendant may make a new defence.

4. The right to mesne profits is a necessary consequence of a recovery in ejectment, and the recovery in ejectment by an incorporated town of an easement which is a real franchise holden by the town under provisions of her charter for the benefit of all the citizens, is no exception as to the right to mesne profits during the occupancy of their property.

5. A plaintiff in ejectment cannot, after recovery, turn this action at law for mesne profits into a suit in Equity, and bring a bill for an account of the profits, except in the case of an infant or *some other very particular circumstances*. The "particular circumstances" excepted in laying down this rule, extend to all cases which involve an Equity which the plaintiff *cannot make available at law*.

6. A suit in Chancery lies for an account of mesne profits after a recovery in ejectment, if the bill shows a right to discovery and relief in a matter incident thereto, and the Court having jurisdiction for one purpose, may finally settle the whole merits of the cause.

7. Where the face of a Bill in Chancery shows a case barred by the satute of limitations, and no circumstances are stated which take the case out of the operation of the act, advantage of it may be taken on a motion for an injunction.

8. In order to arrest by injunction claims established by a decree of a Court of Chancery, it must be shown that the applicant has a prior right which he has not lost by laches.

This case was decided at Tallahassee.

The bill sets forth that the Apalachicola Company, being proprietors of a large tract of land, proceeded in the year 1836 to lay out a town on the tract known as the City of Apalachicola, then already having considerable population and a large and growing trade and commerce. That the Company laid out regular streets and squares, surveying them in a regular manner, and planting stakes, so as to designate the same, and distinguish in a proper manner the different sites and locations, and then proceeded to cut down brush and trees, to fill up and remove swamps and other inequalities, and to grade in proper manner. That a map of the town was likewise prepared, which, after being regularly adopted by the Directors of said Company and Trustees, was in due form presented to, and solemnly adopted by the City Council, on the 2d April, 1836. That this map, after its adoption, was lithographed, and copies thereof used at the sales of the lots publicly made; that they were largely circulated on the day of the sale, and that persons buying at said sale were guided by it and the stakes, in their selection of lots ; and the contracts for sale of said lots and deeds, which were numerous, and amounting to a very large sum of money, were all made to refer to this map ; and said map was regarded as the true and authentic map of the said town; that by this map, *the streets leading to the river were left open*—extended and continued thereto—no lines intervening at or near their termination, so that there was,

as well by the said maps as the large sale, and other action predicated on, and connected therewith, a full, complete, and entire dedication of the land near and to the river, in the direction of the streets, as fully and completely, to every intent and purpose, as of the streets themselves; and the city was entitled to the full and free use, occupancy and possession thereof, as the true and rightful owner thereof.— The bill further sets forth, that afterwards, to wit, in the year 1837, the Company sent a special Agent to said town of Apalachicola, " to examine and report upon the situation of the property ;" that said Agent was also President of the Board of Directors. That this Agent, having possession of what purported to be the original map of the town, made an alteration therein, by making the lines of the wharf property extend across the streets, thereby filling up the vacant space at the end of the streets by lines of his own creation. The bill charges that the design of this action was to revoke the grant previously made to the city, to deprive it of rights solemnly vested by previous dedication, and that the same cannot be otherwise regarded than as a falsification of the muniment by which property holders held their lots, procured at most extravagant prices. The bill avers that the said Agent, President of the Directors, had no power to make said alteration ; nor could so important an act as the change aforesaid be made without the co-operation of the city authorities, of the citizens and of purchasers of lots, and without this the alteration or revocation was impotent and of no avail. The bill further avers that after said alteration of said map, the Company proceeded to take possession and control of the land at the end of the said streets, to erect wharves upon them, to rent them, and to raise revenue and benefits from them. That they continued such possession, use and control from 1838 to 1850 ; that in order to recover back the possession of said land, lying and being at the foot of said

TERMS HELD IN 1861. 343

City of Apalachicola vs. the Apalachicola Land Company.—Statement of Case.

streets, the said City of Apalachicola was compelled to institute an action of ejectment against the said Apalachicola Land Company, which, being instituted, they, on the 26th day of June, 1850, recovered judgment in the District Court of the United States, at Apalachicola, against the said Company, for the recovery of the same ; that the said Company took a writ of error to the Supreme Court of the United States, and the same was dismissed.

That afterwards the said Apalachicola Land Company instituted their action of ejectment in the said District Court for the recovery of said land at the foot of said streets and retrial of said case ; but on the 19th February, 1857, of their own voluntary motion, discontinued the same.

The bill further avers that the said Company, not content with these two several efforts, one Charles Ellis, a Receiver for said Company, recently appointed by the Court in another suit, instituted another suit by ejectment for recovery of the said land at the foot of said streets, which suit has been removed to the County of Gadsden, and is still depending there.

The bill further avers that the said Company are indebted to the City of Apalachicola in a large sum of money, to wit : near the sum of twenty thousand dollars, for the use, occupancy and possession of the said property for the time it was held by them. That they would have instituted suit at law for the recovery thereof, but for the fact that one Andrew S. Garr, having a claim against the said Company for the sum of about eight thousand dollars, instituted a suit in Chancery in the Leon Circuit Court against the Trustees of the said Company, and others, praying that the Court would execute the trust in place of and in behalf of the said Trustees. That an order was passed appointing a Receiver to take charge of the said property, and to sell the same on the terms therein prescribed ; and the said land has been en-

tirely sold under the direction of the Receiver, and in whose hands and possession are the notes, bonds, cash, &c., received for and on account of said land.

The bill further charges that the Trustees are *non residents* and reside beyond this State, and that the proceeds of the lands formerly belonging to said Company, and now in the hands of the Receiver, constitute the only means or property of the said Trustees of said Company, or of the said Company, and that upon a distribution thereof, the same would be entirely dissolved, and that the funds aforesaid are the only means for the satisfaction of the claim of the City in this behalf. That although there has been an agreement for the distribution of these proceeds among certain parties therein named, that the same, nor the decree founded thereon, cannot and should not be carried into effect to the prejudice of the rights and interests of the City of Apalachicola.

The bill further charges that the non residence of the said Trustees beyond the State, and the continued agitation and expenses created by these suits, have been the cause why an earlier application and suit have not been made for the recovery of these rents and profits.

The prayer of the bill is to enjoin the distribution of any sum or sums of money to the Trustees, or any of the Agents of the said Company, or any other person, until the claim of the City of Apalachicola for rents, as aforesaid, is fully and entirely satisfied. That the Map of the City, so falsely, illegally and improperly changed and altered, be ordered to be delivered up and cancelled, and declared to be false, untrue, and entitled to no verity in this respect; and its use on the trial of any suit by the said Company or any one of them, be utterly prohibited and enjoined. That the said Ellis state by what authority and direction he has brought suit for said property, and be ordered to dismiss it as founded in fraud and error. That the Court will direct an ascertainment of the amount

to which he is entitled for rents and profits and use and occupation by said Company of the said property, and give a final decree therefor, and order that the same be paid out of the fund in the hands of the Receiver or other officer of the Court, in the case Garr or the defendants, who have received the same, be made liable therefor, and a decree pass against them to that effect.

By an amendment to the Bill, the complainant avers that they have been subjected to and paid large sums of money for Counsel and Attorney's fees, in the prosecution and defending of said suits; and that the said City is entitled to damages for withholding the said premises from said Company, to be ascertained either by a suit of trespass at law under the order of the Court, or that the Court, through a master, ascertain the same in such manner as they may determine, so as to have as well their damages as the mesne profits made by the said Land Company from the land aforesaid, and also the costs and expenses incurred by the said City, for instituting and defending the suits aforesaid, and in every other respect, &c.

A motion was made before the Chancellor for an injunction as prayed; and on the 16th January, 1861, it was ordered and adjudged that said injunction be refused. From which order an appeal under the statute of 1855 is taken to this Court.

*Thomas Baltzell* for appellant:

This is a suit to recover mesne profits, or the rents and profits of certain wharf lots, after a recovery in ejectment.

The right of toll on wharves is a franchise, or privilege in the subject, existing by grant from the King in England or the Legislature in this country.—3 Paige, 75, 313; 2 Black. Com., 38, n. 53.

346 SUPREME COURT.

City of Apalachicola vs. the Apalachicola Land Company.—Statement of Case.

The right is conferred by charter of the City to rent wharves, appoint wharfingers, &c.—Charter City Apalachicola.

For an intrusion upon this right, or a disturbance of it, whether it be an easement or a franchise, there is a remedy.—3 Blackstone, 237; 1 Arch. Rep. 431.

On general principles, " Land includes not only the ground or soil, but every thing attached to the earth, whether by the course of nature or by the hand of man."—3 Kent Com. 401; Co. Litt., 4.

" Whoever takes possession of land to which another has better title, whether *bona fide* or *mala fide*, is liable to the true owner for all the rents and profits he has received."—Green vs. Biddle, Supreme Court U. S., 8 Wh. 1; 1 Yerger, 380-1.

" He is entitled, both in law and equity and from natural justice, to rents and profits from the time the title accrued."—*Ibid.*

" What is the land but the profits," is the question asked in this very great and important case, and they (the Court) say, " a devise of the profits is a grant of the land itself."— Green vs. Biddle, 8 Wh., 1.

Even if the Trustees did not commit the fraud charged, they are " not entitled to retain the fruits of another's misconduct, nor are they exempt from the duty of restitution."— Willard, 147; 14 Vesey, 273, 289.

The judgment in ejectment ascertaining the right of plaintiff, the wrongful ejection by defendants, and " the right to the rents and profits, is a necessary consequence of the recovery in ejectment, and the judgment is conclusive." 2 John., 369; 3 John., 489.

Complainants are " entitled to be reimbursed what they have been compelled to pay in obtaining a restitution of the property."—Doe vs. Perkins, 8 B. Mon., 198. " To extra trouble and expense in prosecuting the suit."—15 Conn., 236.

Money acquired by fraud, as charged in this Bill, cannot belong to the wrong doer who holds it, but to the proprietor of the property through which it was obtained.

The Statute of limitations does not avail defendants; they are non residents, and were never liable to be sued in the State, and cannot avail themselves of the law in this respect.—Blanch. Limit., 117, 113.

It is objected that the wharves are a part of the street, are open to the public and not subject to the imposition of toll. Defendants cannot make this defense. They are sued for the profits made by them. In reply they say profit should not, and legally could not be made; then they have it illegally and improperly, and should give it up. How are they entitled to the money received for toll on those wharves, if they were not subject to toll?

*M. D. Papy* for appellee.

FORWARD, J., delivered the opinion of the Court.

The Bill, it will be seen, is filed in this case for the purpose of restraining the use of the map, alleged to have been fraudulently altered, for any purpose whatever, against the City, and for the recovery of mesne profits after judgment in ejectment, and for the recovery of the costs of said suit in ejectment.

The main question is, whether the bill makes out a *prima facie* case—such a case as required the Chancellor on the application for said injunction in the exercise of legal discretion according to the rules of equity and good conscience and practice of the Court, to grant said injunction, or in other words, whether the Chancellor erred in refusing said injunction.

The rule of law is, that on the application for an injunction, a Chancellor may go into the consideration of the merits as disclosed in the bill, and which are intrinsic and depend-

348 SUPREME COURT.

City of Apalachicola vs. the Apalachicola Land Company.—Opinion of Court.

ent upon its express allegations and charges.—Rose vs. Hamilton, 1 Dess., 137; and this Court, in the case of Yonge and Bryant vs. McCormick, 6 Fla., 369, held it also to be a rule of practice, that "on a motion for an injunction, the Court will not commit itself to points or questions that may arise at the final hearing."

It is unnecessary to consider so much of the bill as sets forth the alteration of the map, and asks the restraining of the use of the same, as also the restraining of suits, only so far as the same gives jurisdiction to this Court for that purpose, and the consideration of the use that may be made of said map in any recoupment of rents and profits that may be asked. The Bill does not contemplate the injunction prayed in this particular until the final hearing of the cause.

In a question of recoupment or set off of value of improvements to the claim for mesne profits, the question of bona fide possession may be important, and on that issue, whether the Company went into possession by color of this alleged altered map or not, may, it is conceived, be attempted to be raised; therefore, the setting of it (the map) aside, might be proper for the exercise of equity jurisdiction.

The Bill sets forth a recovery in an action of ejectment of the premises in question, and also the possession of the same (obtained by said suit) in the Appellant, avers a right to mesne profits in the nature of damages, and alleges reasons why owner, after recovery of the land, resorts to a bill in equity against the late occupant for an account of the rents and profits.

On the part of the Appellant it is contended that the right of the plaintiff in an action of ejectment, is a necessary consequence of a recovery in ejectment, and the judgment in ejectment is conclusive, and that the case at bar is not an exception to the general rule.

In Blackstone's Commentaries, Vol. 3, page 205, the

commentator, in speaking of recoveries in ejectment and right to action for mesne profits, says: "The judgment in ejectment is conclusive against the defendant for all profits which have accrued since the date of the demise stated in the former declaration of the plaintiff, but if the plaintiff sues for any antecedent profits, the defendant may make a new defence."

The Supreme Court of Tennessee, in the case of Nelson vs. Allen & Harris, 1 Yerger, page 383, say: "A right to land essentially implies a right to the profits accruing from it, since without the latter the former can be of no value."

Again, in Green and others vs. Biddle, 8 Wheaton's Rep., 1, the Supreme Court of the United States say: "At common law, whoever takes and holds possession of land to which another has a better title, whether he be a bona fide or a mala fide possessor, is liable to the true owner for all the rents and profits which he has received; but the disseisor, if he be a bona fide occupant, may recoup the value of the meliorations made by him against the claim of damages."

In Benson and others vs. Matsdorf, 2 Johnson's Law Reports, page 371, the Court say: "It is well settled that the right to mesne profits is a necessary consequence of a recovery in ejectment."

See also Baron vs. Abeel, 3 Johnson's Law Rep., 471. In the case of Averitt vs. Brady, 20 Georgia, 523, the Supreme Court of Georgia say: "In an action for mesne profits against a trespasser, the rule is quite liberal enough, that if the improvements made on the land increase the profits, it is proper for the jury to take into consideration the improvements and to diminish the profits by them, but not below the value without the improvements.

In 4 Phillips on Ev., 315, it is stated that the plaintiff must prove the value of the mesne profits, to be estimated

by the amount of the crops taken, or by the fair annual value of the premises."

On the part of the Appellee it is contended that the Plaintiff in the Court below is not entitled to mesne profits, because the right to the street is only to hold it subject to the public easement, and was not the source of revenue; therefore, the case at Bar is an exception to the general rule of recovery in ejectment.

This brings up the inquiry into what are the rights of the City of Apalachicola, and whether this case is an exception. The Bill sets forth that prior to the incorporation of the City of Apalachicola, to wit: in 1836, the proprietors of the land dedicated the street of the Town, extending then down to the river, to the use of the public; that afterwards, on the 2d February, 1838, an Act of Incorporation was passed by the Legislature, and said Town incorporated.

Here was a dedication to public uses, which, by operation of law, became vested in the officers of the city as soon as they became incorporated, for the benefit of the citizens.— Town of Pawlet vs. Clark, 6 Cranch, 331; 6 Peters, 431.

According to Hilliard on Real Property, Vol. 2, page 16, an easement for the public in the land of others, is not personal estate, but a real franchise, holden by the commonwealth for the benefit of all the citizens. In the case at bar, the easement was a real franchise holden by the corporation for the benefit of all the citizens. We have nothing to do on this appeal with the question whether an action of ejectment will lie to recover possession of a street. That was determined by the recovery in ejectment, and by the recovery and judgment it was determined that the Appellees or defendants in that suit, were guilty of the trespass and ejectment complained of. This establishes the entire ownership for the use of the inhabitants.

The Town, by authority of the Legislature granted in the

Act of Incorporation, have given to them the right to regulate, erect and keep wharves, to appoint wharfingers, &c. The Appellees, or rather the Company, obstructed their right, took possession of the lands upon which they might have erected and kept wharves, prevented the city from building wharves there, built for themselves thereupon wharves, received rents and profits thereof, and continued to hold the same until they were turned out of possession by ejectment. Now, when the city is seeking damages for the obstruction, they are told that the case of Rowan's Ex'rs vs. Town of Portland, 8 B. Munroe, 257, establishes that all the City of Apalachicola could charge for toll, wharfage or fees, or could collect for rent of wharves built by them, was a sufficient sum to secure a fair reimbursement and remuneration for their costs and trouble and expense of keeping them up, and as this was paid by the Company, that, therefore, the City have no action for use and occupation. To this our inquiry is now directed. By reference to authorities, it will be seen that trespass will lie at the suit of a corporation who have the freehold or actual possession of the soil of the market place against a person who places stalls, tables, &c., there without their leave. Mayor, &c., of Norwich vs. Swan, 2 Wm. Blackstone, 1116 ; 2 Strange, 1238. A corporation may also have an action on the case for an interruption of a right of way vested in them. Grant on Corporations, 194, (side paging.) Would it be any answer to the former trespass when damages are asked, to say : We suppose the dedication of the market place was for the advancement of the interests of the town as a commercial place, and not with a particular view to any profit to be derived from rents and tolls, or otherwise, and although the stalls, tables, &c., were erected without their leave, and while the trespassers hold them, they made charges and profit, yet as the town incurred no expense for this particu-

352 SUPREME COURT.

City of Apalachicola vs. the Apalachicola Land Company.—Opinion of Court.

lar object, we think the town must be content with the re-
covery of the right alone, without damages—would this be a
legal answer in justification of a trespasser? We think not.
If in response to the action admitting the right of action for
an interruption of a right of way it is contended the cor-
poration were bound to keep it uninterrupted, we ask whether
it would be an answer for claim for damages for said inter-
ruption to say, the town has incurred no expense in erecting
the building or wharf which interrupted the street, there-
fore the town must be content with the recovery of the right
alone, without damages.

It does not necessarily follow, that the erection of wharves
at the foot of these streets prevented the egress and ingress
of the citizens to the water, for the reason that they may be
so constructed as to afford all the privileges granted to the
inhabitants; but something more was dedicated: the street
was vested in the corporation for the benefit of the citizens.

In the erection of wharves a new improvement was com-
menced, and was authorized by the act of incorporation.—
The corporation then had the right of building wharves, a
right to regulate them for the benefit of the citizens, or, they
being the owners of the land, for the benefit of the citizens,
had the right of renting out the land; the rents and profits
would go to the town treasury for the benefit of the citizens,
but the Company, by taking possession of these lands, without
the leave of the corporation, interrupted their franchise and
deprived the citizens of the benefit they otherwise would
have received from these lands. It is said that the tolls,
wharfage and benefits received by the Apalachicola Compa-
ny, although by usurpation, was a wrong rather against
those who paid them than upon the town, and as the town
itself had only the right of charging toll to an extent suffi-
cient to secure a fair reimbursement and remuneration for
the cost of the wharves and trouble, that, therefore, the

town cannot be entitled to collect for the benefit of the inhabitants any profits. This, upon first view, carries with it a great deal of plausibility. But let us examine it. In the first place, there is nothing in the bill to show that the Apalachicola Company did not collect more than a fair reimbursement and remuneration, while every presumption is that they erected the wharves and kept them up for profit. There is no doubt the commerce of the town was advanced by their erection, but the question arises, whether not only the commerce of the town, but the citizens, would not have been more benefited by the exercise of the franchise of the town, which was interrupted by the usurpation of the Company. Again: If the citizens had been required to pay more than the town was authorized to ask, they, indeed, were wronged, and we ask, was and is it not the right and duty of the Trustees of the people, i. e., the corporation, to collect the rents and profits of the land held for their benefit, and which had been wrongly usurped to their injury? Is it any answer for them to say the people, your *cestui que* trusts, were wronged, and therefore, you, their Trustee, have no action for mesne profits for their benefit? Is it certain that the right of charging toll, by the town itself, could not have been carried beyond a fair remuneration and reimbursement for the costs of the wharves and the keeping of them up?

The wharf case in 3 Bland, 361, is cited as maintaining that a wharf may be dedicated by the owner to the public use, and no toll can afterwards be imposed upon the use of it but by authority of the Legislature. We regret that we have not this volume for examination; not having it, we take the head note as a suggestion. In the case we are considering, the Legislature of our State did give authority to take toll for the use of the people, if the corporation should make that one of the regulations. There is no restriction of the corpora-

tion, and if they can collect tolls at all, we see no reason why they have not the discretion to make the wharves profitable, the proceeds of which go into the Treasury for the benefit of the people.

If this discretion should be abused, the people have their remedy. The case of the Town of Maysville vs. Boon, 2 J. J. Marshall, 226, was the case of a ferry established by the Town on land lying at the foot of a dedicated street.— The Court say, a ferry is a franchise real; it is a common highway. And whether the general interests or that of the Town of Maysville be considered, it would appear more expedient that the citizens of the town, through their appointed organs, should be responsible for the proper management of a ferry at their town, and enjoy the profits resulting from it, than that its control and emoluments should be vested in any one citizen. The Court in this case did not think the Town restricted to a reimbursement and remuneration for the costs of the Ferry—on the contrary, thought they could make profits thereon.

In this Court, in the case of Geiger and others vs. Filor and others, 8 Fla., 347, the Court say: " The power and right of a City to erect a wharf being conceded, it seems to us that the imposition of a toll would and should depend upon a right discretion in the City Council."

The case of Rowan's Exr's vs. Town of Portland, was de-·cided by a very able Court, and so far as it adjudicates the case before the Court, is entitled to great weight. That portion of the opinion of the Court which is not directly in analogy with the facts of the case under consideration, can only be looked upon as extra judicial dicta. In that case there was no recovery in ejectment. The right of property and possession was sought to be declared. There was no judgment in ejectment, conclusive evidence against the defendant for all profits, &c., as in this case. Had that case

been tried at law, and the defendants found guilty of trespass and ejectment, the Court might not have concluded that the town must be content with the recovery of the right alone, without damages or an account. On the contrary, the case of the Trustees of Augusta vs. Perkins, decided at the same term of the Court, as will be seen on page 209 of that book, and which was an action by an incorporated town for mesne profits after a recovery in ejectment, the same Court, in speaking of the set-off against their claim for mesne profits, say : " But whether he has such claim or not, he is liable to the Trustees for the mesne profits during his occupancy of their property."

It will be seen that this case of the Trustees of Augusta was again before the Court at page 198 of the same book, and a full statement of the case will be found reported in 3 B. Munroe's Reports, page 437.

In the case of the City of Savannah vs. the Steamboat Co. of Georgia, R. M. Charlton's Rep., page 350, Judge Law, in delivering the opinion of the Court, says: " The propriety of distinguishing between the Corporation, when the legal title of the land is in them, and an individual, does not occur to me." " The ground itself is to be held and appropriated to the purposes of the grant."

So in this case, we can see no distinction in the right of action for mesne profits, after recovery in ejectment by the City of Apalachicola under the provisions of her charter, from that of the recovery of an individual.

The Appellee says there is no equity in this bill. The Plaintiff having recovered in ejectment, his remedy, if any, was by action of trespass at law for mesne profits.

The rule authorizing the owner after recovery of the land, to resort to a Bill in Equity against the late occupant for an acccount of the rents and profits, is laid down as follows:

" Where a man has title to the possession of lands, and

makes an entry whereby he becomes entitled to damages at law for the time that possession was detained from him, he shall not, after his entry, turn that action at law into a suit in equity, and bring a bill for an account of the profits, except in the case of an infant or some other very particular circumstances." 1 Fonblanque, page 14. The particular circumstances excepted in laying down this rule, extend to all cases which involve an equity which the plaintiff cannot make available at law. Drury vs. Conner, 1 Harris & Gill, 229; Nelson vs. Allen, 1 Yerger, 373; Grimes vs. Wilson, 4 Blackford, 335; Curtis vs. Curtis, 2 Brown Rep., 622.

In Curtis vs. Curtis it was held, that equity will give relief beyond that which the party could obtain at law, if the recovery of the demand has been unconscientiously obstructed. On recurring to the bill, the Complainant charges the fraudulent altering of the map, under which the dedication and the sale of the lots was made. It also charges that the Appellees are seeking to make fraudulent use of it, against any remedies of the Appellees against them, and prays it may be suppressed, and they restrained from using it. This map, as we have seen, might be unconscientiously used against the Appellees on the issue of mala fide possession at law for mesne profits, hence the necessity of relief against it. The bill shows a *prima facie* right to the discovery and relief sought respecting this map. That being the case, it is settled that the Court of Chancery, where the claim is for an account of rents and profits, may finally settle the whole merits of the cause. Elliot vs. Armstrong, 4 Blackford, 423; Dormer vs. Fortescue, 3 Atkins, 132. The bill further states that the Company are non-residents; that there is property of the Company in the hands of persons therein named, who are Receivers of the Court of Chancery, and that the Company have no other property within the

State; that the Court of Chancery has undertaken the trust which belonged to the Company, and as there is nothing to give jurisdiction to a Court of Law, they are compelled to come into Chancery. That the decree under which the Receivers are appointed, and the Court of Chancery, have taken all their property into the registry of the Court, was a consent decree, that therefore, their recovery in law has been unconscientiously obstructed.

Upon the face of the bill, therefore, there is, we think, a *prima facie* case made out for the jurisdiction of a Court of Chancery—sufficient at least until the answer comes in. It is also contended by the Counsel for Appellee, that the claim of the Appellants for mesne profits is barred by the statute of limitations.

The rule is that where the face of a Bill in Chancery shows a case barred by the statute of limitations, and no circumstances are stated which take the case out of the operation of the act, the defendant may take advantage of it by demurrer, and is not bound to plead or answer. Rhode Island vs. Mass., 15 Peters, 236. Whether the Appellant files his claim for any profits antecedent the demise laid in the declaration of ejectment, the bill does not advise us. The bill is not very clear and expressive as to the time for which mesne profits are claimed. Whether a claim which is a real action and is a necessary consequence of a recovery in ejectment and the judgment conclusive, is within the operation of the statute of limitations, we do not undertake to decide, nor can we say the face of the bill shows a case barred by the statute.

There are circumstances stated which are undenied, and which, for the purposes of this application for injunction, make out a *prima facie* case out of the operation of the act.

It is urged that this application for an injunction, if grant-

ed, will have the effect of arresting the execution of a decree of the Court of Chancery. What the provisions of that decree are, the bill does not advise us. It is charged to have been a consent decree, as the bill says "there has been an agreement for the distribution of these proceeds amongst certain parties therein named," &c. In order to arrest the execution of a decree, it must of course be shown that the applicant has a prior right which he has not lost by laches, and it follows that any one having a right prior to the applicant, should not have that right disturbed. There is nothing in the bill to show what the rights of any of the parties to the decree are, unless it is that of Andrew S. Garr. He seems to have been vigilant. Whether he has been paid, or whether there has been any distribution, we are not told. The bill, however, alleges that "the land has been entirely sold under the direction of the Receiver, and in whose hands and possession are the notes, bonds, cash, &c., received for and on account of said lands." It would not, we think, be justice on this application to restrain the recovery of those creditors of said Company who have been vigilant, and by their diligence substantiated their demands against the company, and are only waiting the collection of assets to receive their pay, but if there is any thing in the hands of the Receivers over and above such established debts, that would be a proper fund or choses in action to be restrained from passing into the hands of others until the further order of the Chancellor.

In consideration of the merits as disclosed in the bill, we think the Court below erred in denying an injunction. The cause is therefore remanded back to the Circuit Court, with instructions to grant an injunction until the further order of that Court, enjoining any surplus money or transfer of any notes, bonds, choses in action, &c., or proceeds of any notes, bonds, &c., received for and on account of said lands, re-

maining in the hands of the Receiver, after payment of claims of creditors who have established their claim and obtained a decree for the payment of the same.

As to whether Attorneys' fees, moneys expended in law suits, &c., can and should be allowed in this bill against the late occupant of said premises for mesne profits, this Court does not now undertake to decide.