BEN D. THURSBY, et al., *Appellants,* vs. ISAAC A. STEWART, *Appellee.*

ISAAC A. STEWART, *Appellant,* vs. BEN D. THURSBY, et al. *Appellees.*

138 So. 742.

(See also 137 So. 7).

En Banc.

Opinion filed December 23, 1931.

Petition for rehearing denied January 18, 1932.

992

*Hull, Landis & Whitehair,* of DeLand, for Board of Trustees of Volusia Co. Fair;

*W. J. Gardiner,* of Daytona Beach, for Ben D. Thursby, et al., individually and as constituting Board of County Commissioners of Volusia County;

*Stewart* and *Stewart,* of DeLand, for Solicitors for Isaac A. Stewart.

DAVIS, Commissioner.—Isaac A. Stewart, whom we will refer to as the complainant, the owner of property and a taxpayer in Volusia County, Florida, filed his bill of complaint in the Circuit Court of Volusia County against the members of the Board of County Commissioners of said County of Volusia, individually and as constituting the said Board of County Commissioners, Samuel D. Jordan, Clerk, etc., Volusia County Fair Association, Inc., a corporation, Board of Trustees of Volusia County Fair, a corporation, W. E. Swope, Lillian Frances Nordman, G. A. Tyler, A. B. Prevatt and J. G. Dreka, individually and as constituting the members of ''Board of Trustees of

Volusia County Fair'', a corporation, and therein alleged substantially that the said County Commissioners, without authority of law, donated and paid out, as a gratuity, the sum of four hundred dollars of the public funds of Volusia County to Volusia County Fair Association, a corporation, to help in securing the operation of a county fair, a warrant for said sum having been issued by the Chairman and Clerk of the said Board; that in the budget prepared by said Board, an appropriation of $6,000.00 was provided for to be paid out of the agricultural fund to the said Volusia County Fair Association, and that it was out of said appropriation that said sum of $400.00 was paid; that at the regular session of the Legislature of Florida, in 1931, a bill was passed entitled,

"An Act requiring the Board of County Commissioners of Volusia County, Florida, to Pay Over to the Board of Trustees of the Volusia County Fair, the sum of Six Thousand Dollars ($6,000.00) which was appropriated to the Volusia County Fair Association, by the Board of County Commissioners of said County, in the budget for said County for the fiscal year beginning, on the 1st day of October, A. D. 1930, and to end on the 30th day of September, A. D. 1931."

the same being known and referred to herein as Senate Bill No. 910; that the same Legislature also passed a bill entitled,

"An Act creating a Board of Trustees of the Volusia County Fair, in Volusia County, Florida, and requiring said Board of Trustees to acquire, purchase and take over in the name of Volusia County, all property of the Volusia County Fair Association, Inc., and to promote, maintain and carry on annually a fair or exposition in said county, and investing said Board of Trustees with other powers and duties for the carrying out of the provisions of said Act, and requiring the Board of County Commissioners of Volusia County, Florida, to levy a tax sufficient to raise the necessary funds to carry out the provisions of said Act, said Act not to exceed One Mill on the dollar, and giving the said Board

of Trustees the entire control of such fair or exposition and all matters connected therewith and all property that may be acquired under said act and all funds derived from said tax or any other sources."
the same being known and referred to herein as Senate Bill No. 911 and that both bills were approved by the Governor on June 11, 1931; that pursuant to the terms of Senate Bill No. 910, the said Board of County Commissioners, had been requested by said Board of Trustees of Volusia County Fair, to pay over to them the sum of $6,-000.00 which has been appropriated to Volusia County Fair Association, and that the defendants, W. E. Swope, Lillian Frances Nordman, G. A. Tyler, A. B. Prevatt and J. G. Dreka, were designated in Senate Bill No. 911 as such Board of Trustees; that although the complainant had objected personally to a number of said Board of County Commissioners against the payment of said sum, a meeting of said Commissioners had been called to be held on July 13, 1931, for the purpose of taking action and making payment of such money to the Volusia County Fair Association, and to include in their budget for the year 1931, such sum of money as may be required or demanded by the Board of Trustees of Volusia County Fair, and it was alleged upon information and belief that it was the intention of said Board of Commissioners to misappropriate the further sum of $6,000.00 by paying it over to the Board of Trustees of Volusia County Fair in accordance with the provisions of said Acts of the Legislature; that the appropriation to the Volusia County Fair Association was without authority of law, in that it was in violation of Section 9, Article X, of the Constitution of Florida, which provides that,

"The Legislature shall not authorize any County x x x x x x x to obtain or appropriate money for or to loan its credit to any company, corporation, association, institution or individual,"

and that the Legislature is without power to turn over

the administration of public funds or to expend or disburse the same in any way, except under and pursuant to law, by a duly commissioned officer of the State of Florida, or of the Counties of the State, for a valid County purpose.

Complainant alleged further, upon the information and belief, that said bills, 910 and 911, copies of which were attached to the bill of complaint, are each unconstitutional because it is beyond the legislative power to impose compulsory taxation upon the people of Volusia County; that said bill 911, is unconstitutional and void because it is not authoritative in nature, but is mandatory as to the requirement that the County Commissioners pay said sum of money arbitrarily and without defining any purpose for which it is to be used, that it is not within the power of the Legislature to directly levy or compel the levying by a county of an ad valorem tax for an exclusive local purpose, or to compel the appropriation of money by a county in which the State has no concern, that it mandatorily requires the appropriation of money to be expended by non-commissioned officers, designated as such, in violation of the requirements of the Constitution, and that it violates Section 25 of Article III, of the Constitution, which requires that the legislature shall provide by general law, for incorporating educational, agricultural, mechanical, transportation, mining, mercantile and other useful companies or associations as may be deemed necessary, but shall not pass any special law on any subject, and any such special law shall be of no effect.

The constitutionality of Senate Bill No. 911 is further attacked upon the grounds that, (a) it mandatorily requires the said Board of Trustees to acquire, purchase and take over in the name of the county, all property of Volusia County Fair Association, Inc., (at a sum not to exceed $83,000.00, and pledging the name and credit of Volusia County for the payment thereof), and to promote, maintain and carry on annually, a fair or exposition

in said county, and it also, mandatorily requires the Board of County Commissioners to levy a tax to raise funds sufficient to carry out the provisions of the Act, (b) it requires the Board of Trustees, in effect, County Officers, to be freeholders to be elected by districts and not by the County at large, (c) it names and designates the said officers, until an election provided for therein, in violation of the provision of Section 27, Article III, which provides for an election of officers by the people or appointed by the Governor, (d) it permits the holding of such offices after the next general election to be held in the State, (e) it—a special law—attempts to regulate and determine the compensation of certain officers provided for therein, (f) it provides that if the said Board of Trustees at the time of taking title to the said property, does not have on hand, funds sufficient to pay the purchase price in full, it is authorized and empowered to make and issue, interest bearing negotiable promissory notes in the name of Volusia County, for the deferred payment, and to secure the same by mortgage on all said property, or any parts thereof, (g) it is in conflict with Sec. 1486, Revised General Stats., Sec. 2191, Compiled General Laws of Florida, 1927, a general law which provides that,

"No contract shall be let for the work on any road or street, construction or building of any bridge, erecting or building of any house, and that no goods, supplies or materials for county purposes or use be purchased when the amount to be paid therefor by the county shall exceed $300.00 unless notice thereof be advertised once a week for at least two weeks in some newspaper of general circulation of the County, calling for bids upon the work to be done, and for goods, supplies or materials to be purchased by the county and requiring in each case the bid of the lowest responsible bidder shall be accepted unless all bids are refused because same are too high."

It is further alleged upon information and belief, that the Board of County Commissioners are about to levy

the millage provided in said act to be levied, for the year 1931, and that the said Board of Trustees intends to pay to themselves out of the funds so collected and paid out of the public funds of Volusia County, or to be raised by general taxation, the salaries and compensation provided therein to be paid to themselves for services as such trustees, unless restrained by order of the Court.

The complainant prayed for a temporary injunction, (1) restraining the members of the Board of Trustees of Volusia County Fair from paying to themselves or to one another, any salary or compensation for any services rendered, or to be rendered, in or about the performance of the duties prescribed by the Act creating the said Board of Trustees of Volusia County Fair, (2) restraining the said defendants from submitting ''to the Board of County Commissioners of Volusia County, Florida, on the 1st Monday in July or at any time thereafter, any estimate of any pretended amount of money necessary to be raised for the purpose of carrying out the provisions of said act, to-wit, Senate Bill No. 911, as aforesaid, and that said Ben D. Thursby, W. C. Jackson, Bedford Jones, T. K. Apgar and Davis Forster, and Saml. D. Jordan, Clerk of said Board, be enjoined from levying annually or at any time ad valorem tax for the purpose of carrying out the provisions of said Act,'' (3) restraining the Volusia County Fair Association and the individuals constituting the members of said Board of Trustees ''from issuing any note under color of said Senate Bill No. 911 for the sum of $83,000.00 or any other sum of money in the name of the County of Volusia and State of Florida, for the purchase of any property or other assets of Volusia County Fair Association, Inc., a corporation organized and existing under and by virtue of the laws of the State of Florida, or in any wise pledging or obligating the County of Volusia and State of Florida to any extent whatsoever,'' and that

said injunction be made permanent. The bill was sworn to by the Complainant.

Notice of an application for a temporary injunction was filed in the cause, and thereupon the defendants, Volusia County Fair Association, Inc., and Trustees of Volusia County Fair, interposed certain objections to the granting of same, which objections, were under oath, and based, in substance upon the grounds that (1) the bill is multifarious, (2) that the Volusia County Fair Association, to whom the $6,000.00 appropriation was made, was chartered under the General Laws of Florida authorizing the formation of corporations not for profit, for the purpose of operating fairs, etc., and which law authorized the Board of County Commissioners to make contributions to such association, to assist in carrying out its purpose, and to expend in their discretion, such sums as they deem best in aiding the development of the agricultural, horticultural and live stock resources of the county, giving publicity to the same by aiding the exhibiting of such resources at or in connection with such fairs, including the offering and paying of premiums, (3) that Senate Bill No. 910 is in *pari materia* with Senate Bill No. 911, and that said Senate Bill No. 911 specifically declares that the purchase and taking over of the property of Volusia County Fair Association, and the promoting, maintaining and carrying on annually of a fair, the levying of the tax and paying the same over to the Board of Trustees of Volusia County Fair, are all for a valid County purpose, (4) that it is shown to be the duty of the County Commissioners to pay over the said sum of $6,000.00 and that no showing is made that any of the defendants are about to issue the said promissory notes, (5) that the appropriation of money to the Volusia County Fair Association is not for the benefit of any such company, but for the benefit of the County, and its citizens, (6) that it is not true that the tax sought to be enjoined or the appropria-

tion of money sought to be enjoined, is one pertaining to an exclusive local affair, and in which State of Florida has no interest or concern, (7) that it is not true that the Board of Trustees of the Volusia County Fair are non-commissioned officers, but on the contrary, they have been commissioned in the form contemplated by the constitution of the State of Florida, (8) that Senate Bills numbered 910 and 911, do not authorize the County to loan its credit to any company, association or individual, (9) that the Board of Trustees of Volusia County Fair is nothing more than a subordinate public agency, established in aid of a public purpose, and that the provisions of Section 25, Art. 3, of the Constitution do not apply to such Board, and that Senate Bill No. 911 does not contain special legislation on subjects forbidden by said Section of the Constitution, (10) that the provision of Senate Bill No. 911 that the Board of Trustees of Volusia County Fair shall be freeholders does not curtail the Governor's power of selection so as to violate Section 27 of Article III of the Constitution, or any Constitutional provision relating thereto, (11) that Senate Bill No. 911 provides that in the event the naming of the Trustees of the Volusia County Fair should be judicially determined to be unconstitutional, that the Governor shall appoint such trustees and that the Governor has appointed the same individuals as are named in the Act, to be such Trustees, and they have been duly commissioned, (12) that the term of office of the said trustees is less than six years, and is not condemned by any provision of the State Constitution, (13) that Senate Bill No. 911 does not attempt to fix the fees of officers of the State or County, (14) that the said purchase money, notes and mortgage are not in effect bonds, and if they were, the provision authorizing the issuance of same, is separable from the remainder of the Act and may be eliminated without affecting the primary purpose of the Act, (15) that the legislature was competent to provide that the pro-

visions of Section 1486, Revised Gen. Statutes of Florida, Section 2191, Compiled General Laws of Florida, 1927, shall not apply to the Board of Trustees of the Volusia County Fair, nor to any contracts or agreements of said Board, or to any purchases or obligations thereof, and if held otherwise, such provision may be eliminated from the Act without affecting the purpose of the Act, and (16) that the bill is without equity.

The application for a temporary injunction was denied by Judge Daniel A. Simmons, sitting in Volusia County, Complainant then amended his bill of complaint by alleging further, upon information and belief, in substance, that the property referred to in Senate Bill No. 911, was acquired by the Volusia County Fair Association, Inc., by deed from Sidney A. Wood, as Executor and Trustee under the last will and testament of Asa D. McBride, deceased, for a recited consideration of Ten Dollars and other good and valuable consideration, but as a matter of fact, no consideration was paid therefor; that the said land was donated to the Volusia County Fair Association, Inc., and was in violation of the trust reposed in the said Executor, and Trustee, inasmuch as the said will only authorized him to sell or convey real estate of the estate for the purpose of converting the same into cash for re-investment and uses as directed under the terms of the will, and in consequence thereof, the Volusia County Fair Association, Inc., did not have title to the property, and that the same with the improvements thereon, constituted practically all of the property and assets of the said Volusia County Fair Association, Inc., and that unless restrained and enjoined by order of the Court, the said property will be acquired by the said Board of Trustees, and obligations will be issued in the name of the County of Volusia to the great and irreparable injury of said County and the taxpayers therein. The said amendment alleged further, that upon the day the bill of complaint was filed, the said

County Commissioners prepared their tentative budget for the fiscal year beginning October 1, 1931, and placed therein, an appropriation of $15,000.00 for the use and benefit of the said Board of Trustees of Volusia County Fair, which unless prevented by order of Court, will cause a millage to be levied upon the taxable property of Volusia County, in an amount sufficient to raise said sum of $15,-000.00. Certified copies of the said deed and the said will were attached as exhibits and made a part thereof. The amendment was verified by the oath of the complainant as true, except as to matters stated on information and belief, and as to such matters, he believed them to be true.

The judge of the Seventh Circuit being absent from the Circuit, the bill of complaint and the amendment thereto, without notice to the defendants, was presented to Judge Paul C. Albritton of the Twenty-Seventh Circuit, who thereupon granted a temporary restraining order as prayed for in the bill. In support of the application, Tom Stewart, an attorney for the Complainant, made an affidavit before Judge Albritton, which averred,

"That the said defendant Board of County Commissioners have deferred making payment of the money mentioned in the bill of complaint to the Board of Trustees of Volusia County Fair, because of an insufficiency of money in the agricultural fund of Volusia County, which fund has now become adequate to pay the sum of $6,000.00 and that urgent demands are being made on said Board of County Commissioners to make said payment, and that his Excellency, the Governor of Florida, has signified to said Board his desire that it make such payment promptly or show cause of not so doing; that said Board of County Commissioners has now under consideration the preparation of its annual budget, and is in almost continuous session from day to day in the preparation of same; that affiant believes that to give notice of this application for injunction would cause immediate payment of said sum and accelerate the injury sought to be enjoined; and believes that the injury apprehended will be done if an

immediate remedy is not afforded the complainant, and affiant fears that the Board of Trustees of the Volusia County Fair may take title to said Fair property and issue obligations in the name of Volusia County in payment thereof unless immediate relief is granted.''

From the said order granting a temporary injunction the defendants, Ben. D. Thursby, W. C. Jackson, Bedford Jones, T. K. Apgar, and Davis Forster, individually and as constituting the Board of County Commissioners of Volusia County, Florida, Volusia County, Saml. D. Jordan, Clerk of the Circuit Court, in and for Volusia County, Florida, and ex-officio Clerk of the said Board of County Commissioners for themselves and for the other defendants (naming them) on the 18th day of August, 1931, filed their notice and entry of appeal.

On the said 18th day of August, the Volusia County Fair Association, Inc., and the Board of Trustees of Volusia County Fair, said Board consisting of W. E. Swope, Lillian Frances Nordman, G. A. Tyler, A. B. Prevatt and J. G. Dreka, jointly and severally moved the Court to dissolve the temporary injunction. Objection to the hearing was interposed by the complainant, but on 21st day of August, A. D. a hearing was held and an order was made by Judge Simmons, acting in the place and in stead of the Judge of the 7th Judicial Circuit dissolving the said injunction. From this order and the order of Judge Simmons denying the first application for a temporary injunction, the complainant appealed. The two appeals have been consolidated here.

It is settled here that the granting, continuance and modification of temporary restraining orders are largely discretionary, and the rights of the general public, if affected thereby, should be considered. Suwanee & S. P. R. Co., vs. West Coast Ry. Co., 50 Fla. 609, 612, 39 So. 538; McMullen vs. Pinellas County, 90 Fla. 398, 106 So. 73.

Equity Rule 46 provides that in all cases of applications

for injunctions, the judge to whom presented, before granting the same shall be satisfied that sufficient notice of the application has been given to the party sought to be enjoined, and of the time and place where the motion is to be made, and no order shall be granted without such notice unless it is manifest to such judge from the sworn allegations in the bill or affidavit of the complainant, or other competent person, that the injury apprehended will be done, if an immediate remedy is not afforded, when he may grant instanter an order restraining the party complained of until the hearing or the further order of the court or judge.

> "To justify the granting of an injunction exparte, and without notice, the allegations of the sworn bill or accompanying affidavit must state facts showing how and why the giving of notice will accelerate or precipitate the injury complained of from which the court can determine for itself whether the giving of notice will, or is likely to so result, and such facts must make it manifest to the court that the giving of notice of the application will, or is likely to, have such result." Godwin vs. Phifer, 51 Fla. 441, 41 So. 597, and other cases cited therein.

The allegations in a bill for an injunction must be clear, direct and positive, and must be verified by an affidavit, which also, must be direct and positive; and where any of the material allegations in the bill are stated upon information, there should be annexed to the bill, the additional affidavit of the person from whom the information is derived verifying the truth of the information thus given. If the direct and positive allegations of fact in the sworn bill as amended, are sufficient to constitute a ground for an injunction, and the refusal of the court to grant a temporary injunction upon the first application is not a bar to the making of the order upon the second application, the lower court should not be held in error for granting the order from which the first appeal was taken. We can-

not say that the showing was not sufficient to dispense with notice to the opposite parties of the second application for an injunction.

As a general rule, a second application will be denied merely on a showing that the first one was denied, unless complainant presents new and additional matter discovered since the former hearing but "the refusal of an application for a preliminary injunction does not bar complainant from making a second application, the decision being an act of discretion; and the Court may, in subsequent application, reach a different conclusion on the same or more convincing evidence. The court is not bound to adhere to its former ruling, nor is it bound, in case the former application was in another court, although it will generally do so by way of comity." 32 C. J. 366; Louisville & N. R. Co. vs. Ky. R. R. Commission, 214 Fed. 465.

While a second application for an injunction, when based upon the same evidence or upon evidence which should have been presented upon the first application will generally be denied, it being a matter in which judicial discretion should be exercised, a court will not be held in error in granting a second application if a clear case is presented.

In McMullen vs. Pinellas County, supra, we held that "to the granting of every temporary injunction, two essential conditions must prevail. The bill must allege facts which appear sufficient to constitute a cause of action or ground for injunction, and, on the full showing made from both sides it must appear in the light of the circumstances, that the injunction is necessary to protect the legal rights of the plaintiff pending the litigation."

On an application for a temporary injunction, the chancellor may consider the merits of the bill. City of Apalachicola vs. Apalachicola Land Co., 9 Fla. 340, 70 A. D. 284; McKinney vs. County Commissioners Bradford Coun-

ty, 26 Fla. 267, 4 So. 855, McMullen vs. Pinellas County, supra.

That a citizen and taxpayer may enjoin an unauthorized expenditure of public money, is well established. Rickman vs. Whitehurst, 73 Fla. 152, 74 So: 205, Whitner vs. Woodruff, 68 Fla. 465, 67 So. 110; Anderson vs. Fuller, ·51 Fla. 380, 41 So. 684, 6 L. R. A. (NS) 1026, 120 A. S. R. 170, Lassiter & Co. vs. Taylor, 99 Fla. 819, 128 So. 14.

Likewise, equity has jurisdiction to enjoin the assessment and collection of an illegal tax levied upon real estate, which, if assessed and collected, will cast a cloud over the title of such real estate. Pickett vs. Russell, 42 Fla. 116, 634, 28 So. 764.

We are, therefore, confronted with the inquiry; Are the facts alleged, either in the original bill, or the bill as amended sufficient on the showing made by both sides to justify the chancellor in the exercise of his discretion, in granting the second application for an injunction?

In all cases where there is no constitutional provision making an expense chargeable to the county, it must be for a county purpose in order to justify the legislature in authorizing a county to resort to taxation to defray it (Opinion of Justices, 13 Fla. 687; Board of County Commissioners Escambia County vs. Board of Pilot Commissioners, 52 Fla. 197, 42 So. 697). There is no general rule for determining what is a county purpose (Commissioners of Duval County vs. Jacksonville, 36 Fla. 196, 18 So. 339). In Jordan vs. Duval County, 68 Fla. 48, 66 So. 298, we said:

"While the Constitution provides that 'the Legislature shall authorize the several counties * * * * * * * * in the state to assess and impose taxes for county * * * * * purposes, and for no other purposes,' the term 'county purposes' is not defined or amplified in the organic law. This being so, the Legislative power, in exercising its appropriate law making functions, may determine what is a 'County purpose', and the courts are not

authorized to render such determination ineffectual, unless some provision of the Constitution is violated, or unless the particular enactment can have no legal or practical relation whatever to any 'county purpose.' Where the courts may as in this case inquire into the existence of legislative power to enact a statute, the absence of power must clearly appear before the statute will be declared to be ineffectual for the purpose designed.''

See also, Jacksonville vs. Bowden, 67 Fla. 181, 64 So. 769; Anderson vs. Ocala, 67 Fla. 204, 64 So. 775.

''A statute cannot be judicially declared beyond the power of the Legislature to enact, unless some provision of the Constitution which is in conflict with it, can be, pointed out.'' Neisel vs. Moran, 80 Fla. 98, 85 So. 346.

Complainant insists that both Senate Bill No. 910 and Senate Bill No. 911 violate Section 10 of Article 9 of our Constitution, which provides that ''the Legislature shall not authorize any county * * * * * to obtain or appropriate money for, or to loan its credit to any corporation, association, institution or individual.'' In the first stated contention, the county commissioners are in accord with complainant. On the other hand, the Volusia County Fair Association, Inc., and the Trustees of the Volusia County Fair contend that the Volusia County Fair Association, Inc., is a non-profit corporation, and any taxes levied to obtain funds to be paid to it are not levied for the benefit of a chartered company, but for the benefit of the people; that this court held in Earle vs. Dade County, 92 Fla. 432, 109 So. 331, that taxation for a fair and agricultural exhibition is for a valid county purpose, and that being true, they ask, ''What valid objection is there to placing the money in the hands of a non-profit corporation to aid in the carrying out of such purpose?'' It is not for the Court to say that such an act shall be upheld or declared invalid because they believe it to be wise or ill-advised, as the case may be. We are only concerned in whether or not it is denounced by some provision of the organic law.

In Earle vs. Dade County, 92 Fla. 432, 109 So. 331, we upheld a decision of the lower court, validating bonds of the County of Dade, the issuance of which was authorized by the Legislature under an act providing for the acquirement and holding of real property for fair and fairground purposes, and for the construction thereon of buildings and other structures necessary or desirable for the purpose of conducting fairs and agricultural exhibits, authorizing the County Commissioners to levy upon property an annual tax to be expended in carrying out such purpose and requiring them from time to time, upon the issuance of such bonds, to levy and cause to be collected, a tax sufficient to pay the interest thereon, and the annual installments of such bonds from year to year, as they mature. In speaking for the Court, Justice Brown said,

"The effect of these fairs has no doubt been to stimulate an interest in improved agricultural methods. It may also be true that the public benefits to be derived from such fairs are sufficient to authorize the Legislature to place the expense thereof upon the public rather than upon a few individuals who have the public spirit to promote and organize such enterprises. As to this feature of the act in question, though somewhat paternalistic in its nature, we are not prepared to say that the Legislature has exceeded its powers or come in conflict with any constitutional restriction. This Court has held that the Legislature, in exercising its appropriate law making functions, may determine what is a county purpose within the meaning of Section 5, Art. 9, of the Constitution, and the courts are not authorized to render such legislation ineffectual, *unless some other provision of the Constitution is violated,* or unless the particular enactment can have no practical or legal relation whatever to any county purpose. * * * * * * * * * * * * If the state has the power to establish and operate a state agricultural department, or provide for a commissioner of agriculture, it would appear that it might also, by proper legislation, authorize a county, a political subdivision and agency of the state, to promote the local agricultural interests of the county by acquiring the

property and constructing the buildings necessary to the conduct of free public county fairs in the particular county." (Italics supplied).

Senate Bill No. 910 does not direct for what purpose the said sum of $6,000.00 shall be used, but merely requires the County Commissioners to pay it over to the Board of Trustees of the Volusia County Fair.

Senate Bill No. 911 declares that the purchasing and taking over of the property of Volusia County Fair Association, Inc., the promoting, maintaining and carrying on annually of a Fair or Exposition in the county, and the levying of a tax by the County Commissioners in order to carry out the provisions of the act, "are all for a valid County purpose."

While the constitution provides that the powers and duties of county commissioners are prescribed by law (article 8, section 5, Constitution of Florida), this particular mandate of the Constitution is not violated by the provisions of said bill, that makes it the duty of the Board of Trustees of the Volusia County Fair, to make and submit to the Board of County Commissioners an amount of money necessary to be raised for the purpose of carrying out the provisions of the act, and give to the said Board of Trustees of Volusia County Fair, the supervision and control of "all moneys that may be raised by the tax" as therein provided. County Commissioners have only such authority as is conferred by statute (Baden v. Ricker, 70 Fla. 154, 69 So. 694; Stephens vs. Fulch, 73 Fla. 708, 74 So. 805), and administrative duties pertaining to the affairs of a County may be conferred by law upon officers other than the County Commissioners (State ex rel. Buford vs. Daniel, supra).

The power of the Legislature to pass laws creating County Officers, other than those provided for in the constitution, is "absolute unless restrained by some constitutional

provision." (State ex rel. Bryan, 50 Fla. 293, 376, 39 So. 929).

"All persons by authority of law intrusted with the receipt of public money, or through whose hands such money may pass to the treasury, are 'public officers', whether the service be general or special, transient or permanent." x x x x x x x x x x x.

"Section 27, article 3 of the State Constitution means that when not otherwise provided in the Constitution the executive and administrative governmental functions of the state and counties shall be performed by officers who shall be elected by the people or appointed by the Governor, and that the duties and compensation of such officers shall be fixed by law. Section 7, article 8, requires that such county officers shall be commissioned by the Governor, and that before being commissioned they shall file with the secretary of state a bond to be approved by the county commissioners and by the comptroller, Section 14, article 4, provides that all commissions shall be in the name and under the authority of the state of Florida, sealed with the great seal of the state, signed by the Governor and countersigned by the secretary of state. Section 2, article 16, requires every officer to take the prescribed oath. Section 7, article 16, provides that the Legislature shall not create any office, the term of which shall be longer than four years." Dade County vs. State, 95 Fla. 465, 116 So. 72, 76.

We are impelled to the conclusion that the lower court committed no error in granting the order temporarily restraining the Board of Trustees of Volusia County Fair from issuing any note under color of Senate Bill No. 911, for the sum of $83,000.00, or any other sum of money in the name of Volusia County, for the purchase of any property or other assets of Volusia County Fair Association, Inc., or otherwise pledging or obligating the said County to any extent whatever.

Since no one other than the Board of Trustees of Volusia County Fair is authorized to perform the duties attempted to be conferred by the said Senate Bill No. 911 upon the said Board of Trustees, and the expressed purpose of the

levy of the ad valorem tax is to carry out the provisions of the act, and such provisions as we have seen cannot be carried out because said Board of Trustees are powerless to act for the county, it follows that the levying of the annual tax on all taxable real and personal property in the county should not be made. We hold therefore, that the lower court did not err in granting an order temporarily restraining the members of the Board of County Commissioners from levying an ad valorem tax for the purpose of carrying out the provisions of Senate Bill No. 911.

We will now take up the appeal of the complainant from the order denying a preliminary injunction upon the first application, and (2) from the order dissolving the temporary injunction granted by Judge Albritton. In view of the fact that we have upheld the order granting the injunction upon the second application, we deem it unnecessary to discuss the propriety of the Court's action upon the first application of complainant for such injunction. If error was committed in denying the application when first made, it was corrected when the order for the injunction was made upon the second application therefor.

When the order dissolving the injunction was made, an appeal had been entered by the County Commissioners, and the Clerk, for themselves and for their co-defendants. This notice and entry of appeal having been filed and duly recorded as required by law (Sec. 4904 (2172) Compiled General Laws of Florida, 1927) it gave to the appellate court jurisdiction of the cause and also of the appellants and appellee. Stovall vs. Stovall, 77 Fla. 116, 80 So. 744.

The defendants, who voluntarily appealed, had the right to join their co-defendants, who were also affected by the order, as parties appellant. (Rabinowitz vs. Houk, . . . . Fla. . . ., 129 So. 501, Hay vs. Isletts, 98 Fla. 1026, 125 So. 237; Guaranty T. & T. Co. vs. Thompson, 89 Fla. 35, 103 So. 110.)

It is a general rule that when an appeal is perfected,

the cause becomes one for the cognizance of the appellate court, and for that court alone. The authority of the lower court is terminated, and it cannot proceed in the cause, at least as to the subject matter of the appeal, until the appeal is heard and determined. 3 C. J. 1252, 1255; 2 Enc. P. & Pr. 332. See also Holland vs. State, 15 Fla. 549.

Furthermore, where the defendants are so connected that the rights of one cannot be determined without affecting the rights of the others, and an appeal is lawfully taken. by one defendant, the trial court pending the appeal, cannot take any steps in the case. 3 C. J. 1261; 2 Enc. Pl. & Pr. 334.

This court has said that ''When jurisdiction of appellate court attaches, it is exclusive as to subject covered by appeal.'' Wiley v. W. J. Hoggson Corporation, 89 Fla. 446, 105 So. 126.

By applying the rule just stated to this case, the lower court was without authority to make the order dissolving the injunction at the time it was made, and for that reason the said order should be and the same is hereby reversed.

A supersedeas is not essential to the acquisition of or to preservation of appellate jurisdiction. Wiley v. W. J. Hoggson Corporation, *supra*.

PER CURIAM.—A majority of this Court are of the opinion that so many vital and controlling provisions of Senate Bill No. 911, Acts of the Legislature, Session of 1931, being Chapter 15560, of the 1931 Special Laws, are unconstitutional that by reason thereof the whole Act is unconstitutional and inoperative, it being impossible for the Court to say that with the plainly unconstitutional provisions eliminated from Senate Bill No. 911 (Chapter 15560) entitled:

> ''An Act Creating a Board of Trustees of the Volusia County Fair, in Volusia County, Florida, and requiring said Board of Trustees to acquire, purchase and take over in the name of Volusia County, all property of the Volusia County Fair Association, Inc., and to promote, maintain and carry on annually a fair or exposition

in said County, and investing said Board of Trustees with other powers and duties for the carrying out of the provisions of said Act, and requiring the Board of County Commissioners of Volusia County, Florida, to levy a tax sufficient to raise the necessary funds to carry out the provisions of said Act, said tax not to exceed One Mill on the Dollar, and giving the said Board of Trustees the entire control of such fair or exposition and all matters connected therewith and all property that may be acquired under said Act and all Funds derived from said tax or any other sources,''

that said Bill would have been enacted at all. Therefore that Act falls in its entirety.

Senate Bill No. 910 (Chapter 15557), entitled:

''An Act requiring the Board of County Commissioners of Volusia County, Florida, to Pay Over to the Board of Trustees of the Volusia County Fair, the sum of Six Thousand Dollars ($6,000.00), which was appropriated to the Volusia County Fair Association, by the Board of County Commissioners of said County, in the budget for said County for the fiscal year beginning, on the 1st day of October, A. D. 1930, and to end on the 30th day of September, A. D. 1931,''

is in *pari materia* with Senate Bill No. 911, and if Senate Bill No. 911 is wholly void, the legislative purpose and intent designed by Senate Bill No. 910 cannot be accomplished, so that Act must likewise be held insufficient as a basis for any action or payment of money by the County Commissioners of Volusia County, such as was sought to be enjoined in this case.

Since the principal object of the bill of complaint is to declare unconstitutional and void the aforesaid Acts of the Legislature of 1931, and relief so adjudging them void and unconstitutional is sufficiently sustained by the bill, the injunctions granted should be affirmed insofar as they enjoin and restrain acts of the County Commissioners of Volusia County under the two 1931 enactments hereinbefore referred to.

The injunctions granted are accordingly limited and

modified in effect so as to enjoin and restrain only the threatened acts of the County Commissioners of Volusia County, Florida, specified in the bill of complaint, insofar as such acts are based upon Chapter 15557 and 15560, Acts of 1931, Laws of Florida, as so modified the orders granting injunctions are affirmed. The order of Judge Simmons dissolving the injunction which had been granted by Judge Albritton is reversed.

The question of enjoining payments of moneys by the County Commissioners of Volusia County, Florida, under Sections 6516-6526 C. G. L., 4517-4527 R. G. S., Acts of 1927, is not passed on, because neither the validity, construction nor effect of same is properly involved in the present appeal.

Orders granting injunctions limited in effect, and as so modified, affirmed. Order dissolving injunctions reversed.

BUFORD, C.J., AND WHITFIELD, ELLIS, TERRELL, BROWN AND DAVIS, J.J., concur.

WHITFIELD, J.—Even though under section 6526 (4527) C. G. L. the county commissioners may have duly made an appropriation from county funds to the Volusia County Fair Association for an authorized county purpose, the act designated Senate Bill No. 910, is in the nature of a judicial decree requiring the county commissioners to pay over to the Board of Trustees of the Volusia County Fair, a body proposed to be created by an act of the Florida Legislature, out of the proceeds of the taxes collected and to be collected in said county for the year 1930, the sum of $6,000.00 that was appropriated to the Volusia County Fair Association, by the Board of County Commissioners in the budget for the fiscal year ending September 30, 1931.

The legislature cannot exercise judicial functions. A legislative *command* in the nature of a judicial decree that county funds which have been appropriated for payment to a specific payee shall be paid to a different payee, without anything in the act to show the right of the new payee

or that the payment required to be made is for a lawful county purpose, is not contemplated by the constitution. It is alleged that the appropriation is not made for a public purpose but- violates sections 7 and 10, Article IX, Constitution. If it be assumed that the act may be shown to be valid by reference to the statute designated as Senate Bill No. 911, that act violates section 25, Article III, constitution, in that though it may have reference to a county purpose, Earle v. Dade Co., 92 Fla. 432, 109 So. 331, yet it is a special law, not creating an agency for governmental purposes, but incorporating a "useful" company or association with corporate, powers, when the organic section forbids the legislature to "pass any special law on any such subject, and any such special law shall be of no effect," with exceptions not material here. The provision in the special act requiring the Board of Trustees of the Volusia County Fair to acquire, purchase and take over in the name of Volusia County, property owned by the Volusia County Fair Association, Inc., and other provisions, do not make the Board of Trustees created by the special act an agency for governmental purposes. In State ex rel. v. Daniel, 87 Fla. 270, 99 So. 804, the act was a general law and created an agency for governmental purposes. It is not necessary to consider whether section 20, Article III, or sections 7 and 10, Article IX, constitution, are also violated.

BUFORD, C.J., AND ELLIS, TERRELL, BROWN AND DAVIS, J.J., concur.

BROWN, J., (Concurring specially) :—It appears that the conducting of a County Fair in Volusia County constitutes a purely local and county purpose, and this being true, the legislature has no authority under the constitution to require or compel the county to assess and impose ad valorem taxes for such a purpose. The legislature may authorize the county to do so, but it cannot compel or require it.

Sec. 5 of Art. IX of the constitution provides that the legislature shall "authorize" the several counties to assess and impose taxes for county purposes. This, we have held, refers to ad valorem taxes. There is a vast difference between *authorizing* a county to impose taxes for an exclusively local purpose and *compelling* it to do so. The former recognizes that the county should have some voice in purely county affairs whereas the latter would make possible the centralization of authority over all the local affairs of the counties in the State government, thus tending to build up a centralized and bureaucratic form of government, which, to my mind, is contrary to the system established by our constitution.

This question was very ably discussed and the previous decisions of this court thereon reviewed, by this court, speaking through MR. JUSTICE STRUM, in the case of Amos v. Mathews, 99 Fla. 1, 126 So. 308. A few extracts from the opinion in that case read as follows:

"But the existence of local county officers as a part of our form of government, and for the performance of purely local functions, is clearly recognized by the Constitution, although the legislature possesses powers of the broadest possible nature consistent with the constitutional existence of those officers, in determining the extent of their local *powers* and duties. Therefore, while the legislature may shape local institutions and regulate the frame work of local government with reference to local *powers,* it can not abrogate these constitutionally recognized institutions and take to itself the complete and direct exercise of local functions in matters of *purely local concern.*"

"It is contended in this case that a county is a mere arm or agency of the State—that it is merely 'the State Acting locally.' The foregoing resume of our constitutional system negatives this theory so far as the administration of purely local affairs is concerned. It is true that a county is an agency of the State, having no inherent power, but deriving its powers wholly from the sovereign State. It is also true, to paraphrase the

language of one of the briefs herein, that the principle of local self-government does not constitute each county 'an independent sovereignty, managed by a board having legal rights.' Nevertheless, their existence as local entities for local purposes as well as their existence as legal political divisions of the State is recognized by the Constitution. The same power which created the legislature, namely, the sovereign people, recognized the counties. While a county in the performance of certain functions is an agency or arm of the State, it is also something more than that. If a county were no more than a mere agent of the State,—the State acting locally,—bonds issued by a county would in effect constitute State bonds, and therefore by virtue of Sec. 6 of Art. IX of the Constitution would be void *ab initio*. While the county is an agency of the State, it is also, under our Constitution, to some extent at least, an autonomous, self-governing political entity with respect to *exclusively* local affairs, in the performance of which functions it is distinguished from its creator, the State, and for its acts and obligations when acting in purely local matters the State is not responsible. This, as we have seen, must be conceded in order to sustain the validity of county bonds." * * * * * * * * * * * * * * * *.

"When the language of Sections 2 and 5 of Art. IX is contrasted, however, and is considered in the light of our institutions of government and in the light of the construction placed upon what is now Sec. 2 of Art. IX in Cheney v. Jones, *supra,* it is our judgment that the framers of the Constitution intended to and did withhold from the legislature the power to directly levy, or to compel a county to levy, a local county *ad valorem* tax for an *exclusively* local purpose as already defined herein. Local administration of *exclusively local affairs,* that is, affairs in which the State has no sovereign interest as such, is undoubtedly contemplated by our Constitution. To withhold the co-ordinate power of local determination as to taxation in matters of *exclusively* local concern, would leave little of local government. See Cooley, Taxation (4th ed.), Sec. 416; et seq; Jackson Lbr. Co. v. Walton County, 116 So. 771; People v. Mayor, etc., 51 Ill. 17; Pope v. Phifer, 3 Heisk. (Tenn.) 682, 700; Morgan v. Schussells, 81 N. E. 814;

People v. Common Council of Detroit, 28 Mich. 366; People v. Village of Pelham, 109 N. E. 513; State v. Omaha, 200 N. W. 871; 46 A. L. R. 602, 610; Cooley Const. Lim. (7th ed.) p. 337.''

It may be as contended by Commissioner Davis, that the legislation here under review comes in conflict with Secs. 7 and 10 of Art. 9 and Sec. 20 of Art. 3 of the Constitution, but I am inclined to base my concurrence in the conclusions reached by Commissioner Davis upon the compulsory features of the legislation, in respect to matters which under the constitution the legislature may only authorize, and not require, a county to do.

I am also inclined to agree with Justice DAVIS that under section 6526 C. G. L. the County Commissioners were *authorized* to appropriate $6,000.00 to the Volusia County Fair Association, Inc. for the fiscal year beginning Oct. 1, 1930, but I doubt the validity of the act compelling them to pay this appropriation to the ''Trustees of the Volusia County Fair.'' The tax was not levied for that specific purpose. And, for the reasons above set forth, I am inclined to think the act creating the ''Board of Trustees of the Volusia County Fair'' is itself unconstitutional.

DAVIS, J., concurs.

DAVIS, J., concurring with WHITFIELD, J.:—I concur with the view expressed by MR. JUSTICE WHITFIELD that Senate Bill No. 910, which became Chapter 15557, Acts of 1931, is in the nature of a judicial decree requiring the County Commissioners to pay over to the Board of Trustees of the Volusia County Fair, a body proposed to be created by an Act of the Florida Legislature, the sum of $6,000.00 that was appropriated to the Volusia County Fair Association by the Board of County Commissioners in the budget for the fiscal year ending September 30, 1931, and that such legislative command being in the nature of a judicial decree that County funds which have been appropriated to a specific payee shall be paid

to a different payee is not contemplated by the constitution. I therefore acquiesce in the holding that Chapter 15557, Acts of 1931, insofar as it operates as a *mandatory requirement* on the Board of County Commissioners of Volusia County is unconstitutional, and that payments as *commanded* by the 1931 Act should be enjoined insofar as the 1931 Act seeks to coerce such payments by legislative *fiat*.

I also concur in the view that Chapter 15560, Acts of 1931, is unconstitutional for the reasons pointed out in the opinion by MR. COMMISSIONER DAVIS and in the concurring opinion of MR. JUSTICE WHITFIELD.

The bill of complaint shows that an appropriation was made of the sum of $6,000.00 to the Volusia County Fair Association, Inc., by the Board of County Commissioners of Volusia County for the fiscal year beginning October 1, 1930, and ending September 30, 1931.

Such appropriation was specifically authorized by Section 6526 C. G. L., 4527 R. G. S., which provides that "Board of County Commissioners of the various counties of the State of Florida, are authorized to expend in their discretion such sums as they deem for the best interests of their counties and in aiding the development of the agricultural, horticultural and livestock resources of their counties and in giving publicity to the advantages, facilities and agricultural, horticultural and livestock possibilities and production of their counties by providing for, aiding and assisting the exhibition and demonstration of such resources at and in connection with such fairs and expositions, including the offering and paying of premiums for such exhibition of resources of their respective counties. This Section is a part of Chapter 7388, Acts of 1917, which has been unquestioned as to its validity for fourteen years.

The object of the 1931 Act was simply to amend this already "fixed appropriation" which had been validly

made, by providing that it should be paid,—not to the Volusia County Fair Association, Inc., a voluntary corporation which has existed in Volusia County for many years, but to the new body also created in 1931 known as the Board of Trustees of Volusia County Fair.

If such change gives any one the right to complain, it is not a taxpayer of Volusia County, but is the Volusia County Fair Association, Inc., whose ''fixed appropriation'' has thus been diverted to another separate and distinct body.

In fact, the real complaint against the payment of this $6,000.00 which is a ''fixed appropriation'' to the Volusia County Fair Association, Inc., seems to be that Chapter 7388, Acts of 1917 (Sections 6516 to 6528, C. G. L.), is unconstitutional,—particularly as to Section 6526 C. G. L., 4527 R. G. S., which authorizes county commissioners to appropriate moneys of the county fair associations to aid in the development of the agricultural and livestock resources of the several counties, by means of the publicity which is afforded through these fairs.

I am unable to see where we can declare such purposes as those set out in Section 6526 C. G. L., *supra,* not proper county purposes in view of the Legislature's specific declaration that they are a valid purpose for which the county commissioners of a county may appropriate money. If there was any doubt on this score it has been removed by the holding of this court in Earle v. Dade County, 92 Fla. 432, 109 Sou. Rep. 331, where the court said that the use of taxation by a county to develop and advertise the agricultural, horticultural and livestock advantages of a county through county fairs and expositions was a proper county purpose.

Publicity is perhaps the most powerful influence which exists in our modern life. So great is its value that over a billion dollars a year is spent for it by the people of the United States. Holding a fair or exposition to exhibit the

county's resources is one way of taking advantage of this powerful influence of publicity, and the word "publicity" is expressly used in the law when referring to the purpose for which these appropriations of money are authorized. Publicity with reference to advantages and facilities of a community is now generally recognized in all enlightened communities as being a public purpose, for which tax money can be spent when authorized by appropriate legislation, where the expenditures made for it remain within the control of the public authorities and are not delegated to private agencies.

Here the Board of County Commissioners in September, 1930, determined that the *publicity* of the advantages of Volusia County through the medium of a fair or exposition would be worth at least $6,000.00 to the County, and they put that much in the budget to be used for that purpose.

This was appropriated to be paid over to the Volusia County Fair Association, Inc., as a consideration for the publicity and other advantages which the county would receive through the medium of the Volusia County Fair Association's activities in holding a fair or exposition during that fiscal year. Unless we are going to declare the 1917 statute unconstitutional, as well as the 1931 statute unconstitutional, there is no ground to *enjoin and prohibit* the County Commissioners from paying out this money which they deliberately appropriated under express authority of the 1917 statute, and in consideration of which Volusia County Fair Association, Inc., evidently has incurred expenses and rendered services to the County which justly entitle that Association, if not its 1931 successor, to receive these appropriated funds.

BROWN, J., concurs.