The Honorable H. Lee Moffitt Speaker House of Representatives 420 Capitol Tallahassee, Florida 32301
Dear Representative Moffitt:
This is in response to your request for an opinion on the following questions:
 1. MAY A MEMBER OF THE HOUSE OF REPRESENTATIVES SPEAK OUT IN SUPPORT OF, OR IN OPPOSITION TO, THE ADOPTION OF AMENDMENT 1 AT THE NOVEMBER 1984 GENERAL ELECTION?
 2. MAY A MEMBER OF THE HOUSE OF REPRESENTATIVES EXPEND PUBLIC FUNDS THROUGH THE USE OF CORRESPONDENCE OR TELEPHONE CALLS TO SPEAK OUT IN SUPPORT OF, OR IN OPPOSITION TO, THE ADOPTION OF AMENDMENT 1 AT THE NOVEMBER 1984 GENERAL ELECTION OR THROUGH THE DISTRIBUTION OF INFORMATION CONCERNING THE IMPACT OF AMENDMENT 1 ON THE BUDGET AND ON CURRENT PROGRAMS?
 3. MAY THE HOUSE OF REPRESENTATIVES EXPEND PUBLIC FUNDS TO PREPARE AND DISTRIBUTE INFORMATION TO THE PUBLIC ABOUT THE IMPACT OF AMENDMENT 1 ON THE BUDGET AND ON CURRENT PROGRAMS?
QUESTION ONE
Your first inquiry concerns the right of state legislators to speak out in support of, or in opposition to, issues placed before the electorate, specifically the adoption of Amendment 1 at the November 1984 general election. It should be noted that your first inquiry does not relate to the expenditure of public funds by such legislators and no comment is therefore expressed in this office's response to Question One regarding such expenditures.
I am not aware of any existing state law which prohibits or otherwise bars a legislator from speaking out in support of, or in opposition to, an issue or proposition being placed before the electorate, nor has any such provision been brought to my attention. In fact, s 104.31, F.S., the so-called Little Hatch Act, indicates that all officers and employees of the state retain their right to vote as they choose and to express their opinion on all political subjects and candidates. While prohibiting officers and employees of the state (and counties and municipalities) from using their official authority or influence "for the purpose of interfering with an election . . . or coercing or influencing another person's vote or affecting the resulting thereof;" s104.31(1)(a) [see also, s 104.31(1)(b)], the statute goes on to state that the prohibition in subsection (a)
 shall not be construed so as to limit the political activity in a general, special, primary, bond, referendum, or other election of any kind or nature, of elected officials . . . . The provisions of paragraph (a) shall not be construed so as to limit the political activity in a general, special, primary, bond, referendum, or other election of any kind or nature of the Governor, the elected members of the Governor's Cabinet, or the members of the Legislature.
See, AGO 78-133, in which this office, in interpreting the provisions of s 104.31, concluded that s 104.31(1)(a) should be construed so as to prohibit the corrupt use of official authority or influence for the purposes set forth therein; the affixing of a public officer's official title to an open letter criticizing or endorsing another person's candidacy, however, did not, per se or standing alone, violate s 104.31(1)(a) since such conduct did not itself evince a corrupt use of official authority or influence for the purpose of interfering with an election, or coercing or influencing votes or affecting the results of an election. Thus, the mere use of an official title in political advertisements or other political related writing falls within the realm of "political activity" and is not within the scope of activities prohibited by s 104.31(1)(a). Compare, 5 U.S.C. § 1502(a) the federal Hatch Act, which contains a similar prohibition to s104.31 by providing, inter alia, that state or local officers or employees may not use their official authority or influence for the purpose of interfering with or affecting the result of an election or nomination for office or to directly or indirectly coerce, attempt to coerce, command or advise a state or local officer or employee to pay, lend or contribute anything of value to a party committee, organization, agency or person for political purposes. Subsection (b) of 5 U.S.C. § 1502, however, recognizes that such officer or employee "retains the right to vote as he chooses and to express his opinions on political subjects and candidates." See, 5 U.S.C. § 1501(4) which defines "State or local officer or employee" for purposes of the Hatch Act as an individual employed by a state or local agency whose principal employment is in connection with an activity which is financed in whole or in part by loans or grants made by the United States or federal agency.
Accordingly, I am of the opinion that until judicially determined to the contrary, members of the House of Representatives are not barred by law from expressing their opinions on issues before the electorate and may therefore speak out in support of, or in opposition to, Amendment 1.
QUESTION TWO
Your second inquiry concerns the expenditure of public funds by a member of the House of Representatives through the use of correspondence or telephone calls to speak out in support of, or in opposition to, the adoption of Amendment 1 or through the distribution of information concerning the impact of Amendment 1 on the budget and current programs.
While the issue of whether public funds may be expended to support or to oppose an issue before the electorate has not been extensively litigated in this state, courts in other jurisdictions have questioned the validity of such expenditures in the absence of specific legislative authorization. See Citizens to Protect Public Funds v. Board of Education, 98 A.2d 673, 677 (N.J. 1953), wherein the court considered the legality of a school board's expenditure of public funds for the publication of a booklet concerning a school building program which was the subject of an upcoming bond election, stating:
 [T]he board made use of public funds to advocate one side only of the controversial question without affording the dissenters the opportunity by means of that financed medium to present their side, and thus imperilled the propriety of the entire expenditure. The public funds entrusted to the board belong equally to the proponents and opponents of the proposition, and the use of the funds to finance not the presentation of facts merely but also arguments to persuade the voters that only one side has merit, gives the dissenters just cause for complaint. The expenditure is then not within the implied power and is not lawful in the absence of express authority from the Legislature. (e.s.)
See, AGO 71-28 and Florida Development Commission v. Dickinson,229 So.2d 6 (1 D.C.A.Fla., 1969), cert. denied, 237 So.2d 530
(Fla. 1970) (to perform any function for the state or to expend any money belonging to the state, the officer seeking to perform such function or incur such obligation against the state must find and point to a constitutional or statutory provision authorizing him to do so). See also, AGO 77-8 (and cases cited therein) wherein this office stated that the conclusion that pursuant to Florida law that public funds may not be expended by a statutory entity for lobbying purposes unless expressly and specifically authorized by statute was consistent with the weight of authority throughout the country.
The determination of what is in the public's interest and serves a public purpose is one which the Legislature must make. See generally, Thursby v. Stewart, 138 So. 742, 749 (Fla. 1931) (a statute cannot be declared beyond power of Legislature to enact unless some provision of the Constitution which is in conflict with it can be specifically pointed to); State v. Board of Public Instruction for Dade County, 170 So. 602, 606 (Fla. 1936) (Legislature looks to Constitution for limitations on its power and if not found to exist, its discretion reasonably exercised is the sole brake on the enactment of legislation); State v. Davis,166 So. 289 (Fla. 1936); Farragut v. City of Tampa, 22 So.2d 645
(Fla. 1945). Cf., AGO 74-113 in which this office, recognizing the home rule powers of municipalities, concluded that the governing body of the municipality as the legislative body of that governmental unit could expend municipal funds to purchase newspaper advertisements in support of, or in opposition to, the repeal of a county utilities tax which it determined affects and involves the interest of the municipality and its citizens. Accord, AGO's 74-227 (municipal funds may be used to support position on annexation; municipality is not a "person," "corporation" or "political committee" within the purview of Ch. 106); and 78-41.
Pursuant to s 11.12(1), F.S., the Treasurer is authorized to pay the salary, subsistence and mileage of the members of the Legislature as the same is authorized by law and "such expense of the Legislature as shall be authorized by law, a concurrent resolution, a resolution of either house, or rules adopted by the respective houses, provided the total amount appropriated to the legislative branch shall not be altered, upon receipt of such warrant therefor." All vouchers covering legislative expenses are to be preaudited by the Comptroller. Section 11.12(2). F.S. Each member of the Legislature is entitled to receive a monthly allowance for intradistrict expenses in a uniform amount set annually by the Joint Legislative Management Committee, such expense to be a proper expense of the Legislature and disbursed from the appropriation for legislative expenses. Section 11.13(4), F.S. Thus, if the Legislature deems an expenditure such as contemplated in the instant inquiry to be in the public's interest, the Legislature may enact a statute authorizing such expenditures or pursuant to s 11.12(1), authorize such expenditures by resolution or rule. Such a determination that these expenditures are in the public's interest would be presumptively valid and this office has no authority to declare otherwise. Such a legislative determination, however, is a legislative function which cannot be delegated to the Attorney General nor may the Attorney General undertake to make such a legislative finding and determination for the Legislature or the respective houses thereof.
Any expenditure of state funds by a member of the House of Representatives, however, must be pursuant to the applicable budget and appropriation to the House for legislative expenses, including the expenses of its members. See, s 11.13(5)(a), F.S., stating that expenditures of the Senate, House of Representatives and offices, committees and divisions of the Legislature are to be made within the limits of the budgetary estimates of expenditures for each fiscal year prepared and submitted prior to June 15 by the administrative head of each house, office, committee or division and approved as specified therein; funds may be transferred between items of appropriation to the Legislature when approved by the President of the Senate, the Speaker of the House and the Joint Legislative Management Committee provided the total amount appropriated to the legislative branch is not altered. Cf., s 1(c), Art. VII, State Const. (no money shall be drawn from the treasury except in pursuance of appropriation made by law); s215.35, F.S. (no warrant shall issue unless same has been authorized by an appropriation made by law). Pursuant to s11.13(5)(b), all budgetary units required to submit estimates of expenditures pursuant to subsection (a) must annually submit tentative estimates of their financial needs so that the financial need of the Legislature for the ensuing fiscal year may be reported to the Governor by the President of the Senate, the Speaker of the House and the chairman or co-chairman of the Joint Legislative Management Committee, pursuant to ss 11.148 and 11.40
and as required by s 216.081. See, s 216.081, F.S., which provides that on or before November 1 in each even-numbered year and in sufficient time to be included in the Governor's budget report to the Legislature, estimates of the financial needs of the legislative branch during the ensuing biennium shall be furnished to the Governor; while such data is to be used for information and guidance in estimating the total financial needs of the state, these estimates are not subject to revision or review by the Governor but must be included in his budget report to the Legislature. See also, s 11.148(2), (3) and (5), F.S., relating to the duties and responsibilities of the Joint Legislative Management Committee regarding the preparation of suggested budgets and vouchers for expenses and the preauditing of all vouchers for legislative expenses by the Comptroller.
Therefore, should the Legislature determine by appropriate statute, rule or resolution that such expenditures are in the public's interest and funds therefor properly appropriated and budgeted, an individual legislator may then expend public funds for the purposes set forth in your second question. Compare, s11.151, F.S., establishing a legislative contingency fund of $5,000 for the President of the Senate and $5,000 for the Speaker of the House of Representatives, which amounts are to be set aside annually from moneys appropriated for legislative expense; these funds shall be expended at the unrestricted discretion of the President of the Senate or the Speaker of the House in carrying out their official duties.
Finally, I note from the materials attached to your letter that a question has apparently been raised as to applicability of certain provisions of Ch. 106, F.S., relating to campaign financing. Investigations of alleged violations or determinations of violations of Ch. 106 are within the province of the Division of Elections and of the Florida Elections Commission. See, s106.22(7) (duty of division to investigate apparent or alleged violations of Ch. 106 and recommend legal disposition of violations); s 106.23(1); s 106.25 (jurisdiction to investigate and determine violations of Ch. 106 vested in division and Florida Elections Commission). Moreover, the Division of Elections is authorized to provide advisory opinions when requested by, inter alia, any candidate or other person or organization engaged in political activity, relating to any provisions or possible violations of the Florida election laws with respect to actions which such candidate, person or organization has taken or proposes to take. See, s 106.23(2), F.S. In light of the division's responsibilities and duties in this area, any question relating to the applicability or possible violation of Ch. 106 or other provisions in the Florida election laws should be submitted to the Division of Elections.
Accordingly, I am of the opinion, until judicially determined to the contrary, that if the Legislature determines that the expenditure of public funds by legislators in support of, or in opposition to, the adoption of Amendment 1 or to disseminate information concerning the impact of that amendment on the budget and current programs is in the public's interest, the Legislature may authorize such an expenditure by statute, or pursuant to s11.12(1), F.S., by concurrent resolution, resolution of either house or by rule adopted by the respective houses. Such a determination by the Legislature or the respective houses thereof is presumptively valid and this office has no authority to declare otherwise nor can this office be delegated the authority to make such a legislative determination.
QUESTION THREE
This office's response in the previous question would appear to be equally applicable to, and responsive of, your third inquiry.
In sum and until legislatively or judicially determined to the contrary, I am of the opinion that
 (1) Members of the House of Representatives are not barred by law from expressing their opinions on issues before the electorate and may therefore speak out in support of, or in opposition to, Amendment 1.
 (2) If the Legislature determines that the expenditure of public funds by legislators to support or oppose the adoption of Amendment 1 or to disseminate information regarding the impact of that amendment on current programs is in the public's interest, the Legislature may authorize such expenditures by statute, or pursuant to s 11.12(1), F.S., by concurrent resolution or resolution of either house or by rule adopted by the respective houses. Such a determination is one which the Legislature or the respective houses thereof must make and cannot be delegated to the Attorney General's Office. Any expenditure of state funds by a member of the House of Representatives must be authorized by law or resolution or rule adopted by the house and be made pursuant to the applicable budget and appropriation to the House for legislative expenses, including expenses of its members.
Sincerely,
Jim Smith Attorney General
Prepared by:
Joslyn Wilson Assistant Attorney General