61 So.2d 374 (1952)
STATE
v.
UCCIFERRI.
Supreme Court of Florida, en Banc.
November 14, 1952.
Richard W. Ervin, Atty. Gen., Reeves Bowen, Asst. Atty. Gen., Robert R. Taylor, County Sol., Miami, and Vivion B. Rutherford, Miami Beach, for appellant.
Frank Clark, Jr., Miami, for appellee.
TERRELL, Justice.
The County Solicitor of Dade County filed an information against appellee, charging him with violating Section 1, Chapter 26722, Acts of 1951 (now Section 550.35, Subsection 1, F.S.A.). The pertinent part of the information is as follows:
"* * * that Benny I. Ucciferri of the County of Dade and State of Florida, in the 4th day of January, in the year of our Lord, one thousand nine hundred and fifty-two, in the County and State aforesaid, did unlawfully transmit or communicate to a person or persons whose name or names are to the County Solicitor unknown, the result of a horse race, to-wit: the fourth race, from a track operating in the State of Florida, to-wit: Tropical Park, within thirty minutes after posting of the official result of the said race. * * *"
A motion to quash was granted and the State has appealed. The pertinent part of Section 550.35, F.S.A., is as follows:
"(1) It shall be unlawful for any person to transmit or communicate to another by any means whatsoever the results, changing odds, track conditions, jockey changes, or any other information relating to any horse race from any race track in this state, between the period of time beginning one hour prior to the first race of any day and ending thirty minutes after the posting of the official results of each race as to that particular race, excepting that this time may be reduced to permit the transmitting of the results of the last race each day not sooner than fifteen minutes after the official posting of such results. *375 Provided, however, that the State Racing Commission may, by rule, permit the immediate transmission by radio, television, or press wire of any pertinent information concerning not more than two feature races each week."
Following the quoted statute is the penalty for its violation and a declaration by the legislature that said act shall be deemed an exercise of the police power of the state for the protection of the public welfare, health, peace, safety, and morals of the people. We are enjoined to construe it liberally for that purpose.
The point for determination is whether or not the time limitation, named in the statute, within which horse race results may not be reported, is a violation of free speech as guaranteed by the First Amendment to the Federal Constitution and Section 13, Declaration of Rights, Constitution of Florida.
The time limitation complained of is the "period * * * beginning one hour prior to the first race of any day and ending thirty minutes after the posting of the official results of each race after that particular race." The purpose of the statute was not to inhibit the giving of racing information to the public as news, but to prohibit its use for an unlawful purpose; that is to say, bookmaking. After the time limitation expires, the information becomes public property and is no longer valuable for bookmaking purposes. The bookmaker is the only person complaining and the only one who, it is charged, stands to lose by enforcement of the act.
Appellee contends that the act is violative of his right of free speech because it puts a gag in his mouth and will not even permit him to communicate horse race information about the race track. It is true that appellee will be prevented from securing the results of any horse race for 30 minutes after it is run. This will be too late for him to use the information to bet on the next race or place his winnings on it if he happens to have any. It also results in a "cut in" on the bookie's profits.
Is such a limitation on reporting race track information an unreasonable exercise of the police power? This court and other courts are committed to the doctrine that the legislature has power to single out condemn and punish such acts as it deems injurious to the public morals. If furnishing information about horse racing or bookmaking falls in that category, it may resort to such means as are reasonable and within constitutional limitations to suppress it. McInerney v. Ervin, Fla., 46 So.2d 458; L. Maxcy, Inc. v. Mayo, 103 Fla. 552, 139 So. 121; Southern Bell Telephone and Telegraph Company v. State ex rel. Transradio Press Service, Inc., Fla., 53 So.2d 863; Parkes v. Bartlett, 236 Mich. 460, 210 N.W. 492, 47 A.L.R. 1128; Ex parte Rapier, 143 U.S. 110, 12 S.Ct. 374, 36 L.Ed. 93, and many other cases might be cited.
As this court pointed out in the McInerney case, the difference between private wire service and the same service furnished by news periodicals, is one of speed and organization whereby the information secured can be placed in the hands of the purchaser and used for gambling purposes before it is published and becomes public property. Except for this element, the "bookie" business would not be profitable, and doubtless would not exist. It is this element that makes betting on horse racing and other sporting events pay off. Delaying publication of the results for 30 minutes after the race is over, cuts off the bookmaker's source of profit.
The court has reached the conclusion that on the basis of the facts stated and on authority of the cases cited, Section 550.35, F.S.A., is a reasonable exercise of the police power and is not violative of free speech as guaranteed by the State or Federal Constitution. It results that the judgment appealed from must be and is hereby reversed with directions to proceed accordingly.
Reversed.
SEBRING, C.J., and THOMAS, HOBSON, ROBERTS, MATHEWS, and DREW, JJ., concur.