152 So.2d 179 (1963)
NATIONAL ASSOCIATION FOR the ADVANCEMENT OF COLORED PEOPLE, a non-profit New York corporation authorized to do business in the State of Florida, Ralph M. Wimbish and Bette C. Wimbish, his wife, et al., Appellants,
v.
WEBB's CITY, INC., a Florida Corporation, Appellee.
No. 3609.
District Court of Appeal of Florida. Second District.
April 17, 1963.
Minnis & Williams, Frank H. White, St. Petersburg, and Robert L. Carter, New York City, for appellants.
Bucklew, Ramsey & Phillips, Tampa, for appellee.
BARNS, PAUL D., Associate Judge.
The appellee, Webb's City, Inc., brought a suit in equity seeking an injunction against the appellants, National Association for the Advancement of Colored People, (hereinafter referred to as NAACP), and Ralph M. Wimbish for interference with the business of the Webb's City by picketing its place of business and inducing a customer boycott. At final hearing a permanent injunction was entered against the defendants whereupon they brought this appeal. We fail to find error and affirm.
The Chancellor's findings of fact and final decree is as follo 
"CHANCELLOR'S FINDINGS OF FACT AND FINAL DECREE
"1. This Court has jurisdiction of the parties and of the subject matter of this cause.
*180 "2. The plaintiff is a Florida corporation privately owned and organized and doing a general mercantile business in the City of St. Petersburg, Pinellas County, Florida.
"3. The defendant National Association for the Advancement of Colored People, commonly known as the NAACP, is a non-profit New York corporation authorized to operate in the State of Florida and having a local chapter in St. Petersburg, Florida, chartered by said corporation.
"4. The defendant Ralph M. Wimbish is President of the St. Petersburg Chapter of the defendant corporation, and the defendant Bette C. Wimbish is the wife of the defendant Ralph M. Wimbish.
"5. The plaintiff sought and this Court issued on December 6, 1960 a temporary restraining order restraining the defendants, all members of the St. Petersburg chapter of the NAACP, and all other persons acting in conjunction with the named defendants from committing any of the following acts:
"(a) Displaying signs, posters or handbills requesting that members of the public not trade with the plaintiff, either on the premises of the plaintiff or on the sidewalk immediately adjacent thereto.
"(b) Picketing the premises of the plaintiff located at 128 Ninth Street South, St. Petersburg, Florida, or interfering in any manner whatsoever with the free ingress and egress of the customers of the plaintiff at said place of business.
"(c) Placing telephone calls to the place of business of the plaintiff, except for the purpose of transacting legitimate business with the plaintiff.
"(d) Threatening any employee of the plaintiff, or threatening any person providing transportation to any such employee from his residence to the place of business of the plaintiff.
"6. The plaintiff alleges that the acts which have been enjoined were done with malicious intent to injure the business of the plaintiff and force the plaintiff to manage its business in a manner to suit the corporate defendant, and that said acts of the defendants were in fact injurious to the plaintiff's business. The plaintiff contends that such picketing is unlawful and subject to injunction in equity.
"7. The defendants challenge the temporary injunction previously issued herein on the ground inter alia that injunction is not a proper remedy and insist that any permanent injunction in this cause would be violative of the defendants' rights as guaranteed by the 14th amendment to the Constitution of the United States and by Sections 13 and 14 of the Declaration of Rights of the Constitution of the State of Florida. The defendants contend in effect that the picketing in this case was peaceful, as planned, and that peaceful picketing to impel compliance with the social and economic goals of the defendants is lawful and not subject to injunction.
"8. On December 2, 1960 a named group of approximately thirty men and women identified with the defendants, other than Bette C. Wimbish, began picketing the premises of the plaintiff in St. Petersburg, Florida, carrying large placards reading as follows:
"DON'T BUY WHERE YOU CANNOT WORK ON ANY JOB OR BE UPGRADED TO BETTER PAYING POSITIONS."
"BUY WITH FRIENDS: MERCHANTS WHO TREAT YOU WITH HUMAN DIGNITY."
"DON'T PAY TO BE SEGRATED (sic). DON'T BUY FOR CHRISTMAS. JOIN THE NAACP'S SELECTIVE BUYING PROTEST."
"DON'T BUY WHERE YOU AREN'T WELCOME."
"9. The defendants' picketing demonstration was planned and organized by the corporate defendant, acting through the Youth Counsel and the Selective Buying Committee of the St. Petersburg Chapter *181 of the NAACP, with the intent to disrupt and discourage trade with the plaintiff and in protest of the plaintiff's policies of lunch counter segregation and not having Negro employees more in proportion to the percentage of plaintiff's Negro trade and not employing Negroes in top administrative positions.
"10. On December 2, 1960 the march of the picketers included an inside demonstration within the trading area of plaintiff's premises.
"11. The corporate defendant and its agents who organized the demonstration did not limit participation in the picketing to members of their organization, but on the contrary invited participation in the demonstration by any interested citizens.
"12. On December 6, 1960 one Jack Morrison, Jr., was arrested by the City Police of the City of St. Petersburg on a charge of unlawfully trespassing on the private property of the plaintiff, the evidence disclosing that said Jack Morrison, Jr., although not shown to be a member of the NAACP, was then and there an active participant in the demonstration, was obstructing an entrance to the plaintiff's premises and in so doing had been standing upon the threshold of said entrance. Subsequently the said Jack Morrison, Jr., was convicted of offense against municipal law of the City of St. Petersburg.
"13. The picketing demonstration resulted in a tense and inflammatory situation in and about the plaintiff's premises which adversely affected the peace and tranquility of the community of St. Petersburg and created an atmosphere of apprehension and potential violence.
"14. During the period from December 2 through December 6, 1960 the switchboard at the plaintiff's place of business was subjected to numerous telephone calls from undisclosed and unknown parties who used profane language directed toward the plaintiff and its employees.
"15. The aforesaid picketing continued for the period of December 2, 3, 5 and 6, 1960 and, as a direct consequence thereof, the plaintiff suffered loss of revenue of not less than $10,000.00 below the reasonably expected revenue for each of said days. These losses represented substantial damage to plaintiff's private business not adequately remediable by action or actions at law.

* * * * * *
"The Court is mindful of the various rights and freedoms comprehended, expressly or impliedly, within the protective provisions of the State and Federal Constitutions. Among these are freedom of speech and opinion and the right to protest and to seek personal betterment. Such are the indisputable rights of these defendants and of all other citizens; but personal rights of this character are qualified rather than absolute because the law implicitly requires that individual rights be exercised with due regard for the rights of others who have the right to differ.
"Under the most liberal judicial concept of our constitutional system of government there remain, and should remain, some areas in which private individuals and business establishments have the legal right to pursue distinctive policies not wholly acceptable to others, and to resort to the police power of the state for relief against noxious encroachments upon such right.
"The right to protest the policies of lawful private interests such as plaintiff's may be exercised within proper limits, for example, through conventional modes of communication or by withholding patronage; but coercive and destructive picketing may be enjoined by a court of equity where, as in this case, there is no adequate remedy at law for continuing and recurring damages.
"This points up a well recognized reason for the extraordinary writ of injunction in equity. Law and order would be greatly disserved if restraint through courts of equity were not available in circumstances as disclosed by the record in this case. The *182 only alternative of the aggrieved party, other than to surrender his legal rights, would be to retaliate in kind or resort to repeated institution of separate proceedings with respect to similar offenses after their commission. Such multiplicity of actions in police courts and law tribunals would be unduly burdensome and relatively ineffectual in curbing the unlawful transgressions. See Miami Typographic [Typographical] Union #430 v. Ormerod, Fla., 61 So.2d 753.
"As indicated in the above cited decision of the Supreme Court of Florida, as well as in decisions of the Supreme Court of the United States, even peaceful picketing is not necessarily equated with the constitutional guarantee of freedom of speech. It follows that where picketing is inflammatory and damaging in purpose and effect, as in the instant case, the actions of the defendants are unlawful and are not clothed with constitutional protection.
"The defendants argue vindication of their picketing by pointing to the rectitude of their ultimate objectives, suggesting that the ends sought justify the means employed. This is a diversionary argument which begs the real question involved.
"IT IS THEREUPON ORDERED, ADJUDGED AND DECREED as follows:
"1. That the motion to dismiss made at the conclusion of the trial as to the defendant, Bette C. Wimbish, be and the same is hereby granted.
"2. That all motions to dissolve the temporary restraining order be and the same are hereby denied.
"3. That the motions to dismiss as to the defendants, National Association for the Advancement of Colored People and Ralph M. Wimbish, be and the same are hereby denied.
"4. That all motions to strike and to dismiss made preliminary to final hearing be and the same are hereby denied.
"5. That the application of the plaintiff for permanent injunction, except as to Bette C. Wimbish, be and the same is hereby granted and as to all other defendants the temporary restraining order heretofore entered by this Court on December 6, 1960 is hereby continued in full force and effect and made a part of this final decree."
Is a boycott promoted by picketing to advance the interest of a particular racial or social group, other than labor organization or professional association, valid? This is a racial or social question and the rules of law applicable to labor disputes have no application here.
One's business, aside from the investment of money and tangible property employed therein, is in every sense of the word property, and, as such, if lawful, entitled to protection from all unlawful interference. 15 C.J.S. Conspiracy § 12, p. 1014, citing Truax v. Corrigan (per Justice Taft) 257 U.S. 312, 42 S.Ct. 124, 66 L.Ed. 254.
The primary purpose of the picketing was to interfere with Webb's right to an unhampered market for the sale of its commodities and services by coercing customers or prospective customers into withholding patronage and thereby to cause injury to Webb's business; its purpose was to injure by inducing a customer boycott, and it did.
We are not dealing with the rights of the defendants to use concerted action in appealing to others to cease to patronize Webb's City, but to the contrary, we are dealing with the question as to whether or not such an appeal may be made by coercive picketing. As stated in Hughes v. Superior Court, 339 U.S. 460, 70 S.Ct. 718, 94 L.Ed. 985:
"`[T]he domain of liberty, withdrawn by the Fourteenth Amendment from encroachment by the states,' Palko v. State of Connecticut, 302 U.S. 319, 327, 58 S.Ct. 149, 153, 82 L.Ed. 288, no doubt includes liberty of thought and appropriate means for expressing *183 it. But while picketing is a mode of communication it is inseparably something more and different. Industrial picketing `is more than free speech, since it involves patrol of a particular locality and since the very presence of a picket line may induce action of one kind or another, quite irrespective of the nature of the ideas which are being disseminated.' Mr. Justice Douglas, joined by Black and Murphy, JJ., concurring in Bakery and Pastry Drivers and Helpers Local 802 of International Brotherhood of Teamsters v. Wohl, 315 U.S. 768 769, 775, 776, 62 S.Ct. 816, 819, 86 L.Ed. 1178. Publication in a newspaper, or by distribution of circulars, may convey the same information or make the same charge as do those patrolling a picket line. But the very purpose of a picket line is to exert influences, and it produces consequences, different from other modes of communication. The loyalties and responses evoked and exacted by picket lines are unlike those flowing from appeals by printed word."
The defendants had a right to buy where they please and by concerted action to cease patronizing Webb's when they considered it to their interest to do so; and in turn Webb's City had a right not to sell. As stated in Cooley in Torts 278: "It is a part of man's legal rights * * * that he be left at liberty to refuse business relations with any person whomsoever, whether the refusal rest upon reason, or is the result of whim, caprice, prejudice, or malice."
When considering the plaintiff's interest in its commercial expectancies from its business weighed against the defendants' interest in advancing their social objectives and the injury occasioned by the defendants' coercive picketing causing plaintiff's customers and prospective customers not to enter into or continue business relations with the plaintiff, it appears that the Chancellor has not erred. Green v. Samuelson, 168 Md. 421, 178 A. 109, 99 A.L.R. 528; A.S. Beck Shoe Corp. v. Johnson, 153 Misc. 363, 274 N.Y.S. 946; Restatement, Torts, § 766; 48 Harvard Law Rev. 691, 56 Harvard Law Review 180, 513, 532 and 484 (text 486).
Affirmed.
SHANNON, C.J., and SMITH, J., concur.