236 So.2d 120 (1970)
Jack LIEBERMAN et al., Appellants,
v.
J. Stanley MARSHALL, As Acting President of the Florida State University, a Part of the University System of the State of Florida, Appellee.
No. 38787.
Supreme Court of Florida.
May 28, 1970.
Rehearing Denied June 26, 1970.
*122 Richard J. Wilson, and Margaret Kathleen Wright, Gainesville, for appellants.
Wilfred C. Varn, of Ervin, Pennington, Varn & Jacobs, Tallahassee, for appellee.
*123 ADKINS, Justice.
This is an interlocutory appeal from an order denying a motion to dissolve a temporary injunction enjoining certain members of a Chapter of Students for a Democratic Society (SDS) from holding any meeting or rally in any buildings of the campus of Florida State University, a state supported institution, until further order of Court. The interlocutory appeal was first taken to the First District Court of Appeal, but that Court granted appellee's motion to transfer the cause to this Court because constitutional questions in the area of rights claimed by appellants under the First and Fourteenth Amendments to the Constitution of the United States and Sections Five and Nine of Article I, Declaration of Rights, Florida Constitution, F.S.A., are involved. It was alleged that the purpose of the rally was to sponsor a speaker. By virtue of this allegation, appellants' rights under Section Four, Article I, Declaration of Rights, Florida Constitution, are involved. In view of the fact that a final judgment would be directly appealable to this Court, we accept jurisdiction of the interlocutory appeal. Dade County v. Kelly, 149 So.2d 382 (Fla.App. 1963).
At the outset, certain basic principles should be considered. The powers and responsibilities of The Board of Regents, a university president, or principal of a public school, are awesome and extensive. The administrator has wide discretion in dealing with the requirements of campus order and discipline, and with the time, place, and manner of extracurricular lectures. This Court will not ordinarily review the wisdom with which that discretion is exercised. But this Court will review the exercise of governmental power where there is a tenable claim that it has been exercised in a manner inconsistent with the Constitution. See Brooks v. Auburn University, 296 F. Supp. 188 (M.D. Ala. 1969).
A college education is no longer a luxury for the wealthy, but is regarded as a necessity for most high school graduates. College students today, through the television, radio, and news media, are usually well-informed in national affairs and reliant. Unfortunately, many limit their interests to rights and privileges to the extent of ignoring their duties and responsibilities to our Great American Heritage. Be that as it may, the State cannot condition the granting of a college education, even though a privilege, upon the renunciation of constitutional rights. Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir.1961). See Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969).
The leaders of great universities are frequently required to make agonizing, hard decisions which may well affect the very existence of the university as a free institution. On one side the university president must consider what the Legislature may think; on the other, he must consider what the militant students may think. The long-term interests of the institution require the right decision, regardless of immediate consequences. So it is that the Constitution furnishes a straight, well-defined path for the preservation and continued improvement of our great educational institutions.
Under the United States or Florida Constitution, any college, university, or public school authority may enact rules and regulations denying a campus group access to the institution's buildings, as well as denying an invitation to a guest speaker requested by a campus group, if it reasonably appears that such group or the speaker would, in the course of the use of the building, advocate or attempt:
(1) Violent overthrow of the Government of the United States, the State of Florida, or any political subdivision thereof;

*124 (2) Willful destruction or seizure of the institution's buildings or other property;
(3) Disruption or impairment, by force, of the institution's regularly scheduled classes or other educational functions;
(4) Physical harm, coercion, intimidation or other invasion of lawful rights of the institution's officials, faculty members or students; or
(5) Other campus disorder of violent nature.
Such rules and regulations meet the clear and present danger test, as they suppress only those activities which would result in serious substantive evil which the institution has the right to prevent. See Stacy v. Williams, 306 F. Supp. 963 (N.D.Miss. 1969).
This case arose at the Florida State University in Tallahassee. J. Stanley Marshall, as Acting President of the University, secured an ex parte restraining order March 4, 1969, to prevent the alleged intended occupation that same evening, without permission of the University, of the Florida Room of the University Union. Under regulations of the Board of Regents of the University System of Florida, as well as Regulations of Florida State University, student organizations officially recognized by the Administration of the University may with permission use the university buildings for holding scheduled rallies and sponsoring speakers. The campus chapter of Students for a Democratic Society, SDS, was denied official recognition a few days previously by Acting President Marshall.
The President sought a court order forbidding use of the building for the purpose of holding a nonapproved rally or sponsoring the appearance of a speaker, which rally and speech he alleged were to be held for the sole purpose of causing a confrontation between the administration and SDS, which it was alleged would have resulted in disruption to the University and would have caused irreparable injury. The Circuit Court of Leon County enjoined occupation of campus buildings, but not use of campus grounds.
The injunctive order of the Court was served the evening of March 4, 1969 on defendants by law officers, in the Florida Room, after the occupation and rally already had begun. Although many students left the premises on reading of the Court order, a number refused to obey. Fifty-eight were arrested, and several were ordered by the Court to show cause why they should not be held in contempt.
Subsequently, the defendants moved to dismiss the injunctive complaint for insufficiency, and to dissolve the injunction forbidding use of campus buildings on grounds it violated their constitutional rights. At a hearing April 28, 1969, the trial judge refused both motions, stating his findings that the restraining order had been necessary, because the confrontation planned and staged by SDS would have created a risk of violence and would have unduly disrupted the University campus.
The issues raised and argued by defendants center on two primary questions:
First, was the injunction legally sufficient at the time it was initially issued?
Second, do the SDS members have a present constitutional right to use the Florida Room of the University Union regardless of University rules or decisions; restated, does denial of such use infringe on citizenship rights protected by the Federal or State Constitutions?
These questions will be discussed in order.
The temporary injunction was issued without notice to the defendants and without giving them an opportunity to be heard in opposition.
Rule 1.610(b), R.C.P., 31 F.S.A., contains the following:
"No temporary injunction shall be granted except after notice to the adverse *125 party unless it is manifest from the allegations of a verified complaint or supporting affidavits that the injury will be done if an immediate remedy is not afforded and in such event the court may grant a temporary injunction until a hearing or further order of court."
The rule also provides for bond, dispensable if the injunction is sought by a public agency. A state university is such an agency, and the trial judge had authority to issue the injunction without requiring bond.
Rule 1.610(b) rests on the rationale that courts should not intercede in the affairs of men except on a showing of necessity, where injury and damage are shown by proofs. Since orders are sustained by proofs, and proofs result from adversarial presentations, a court should never issue an ex parte order without notice to defendants and without a hearing, unless an immediate threat of irreparable injury exists, which forecloses opportunity to give reasonable notice and in which a subsequent remedy for damages or other relief would be inadequate.
To justify issuance of a restraining order without notice, it must appear that the time required to give notice of a hearing would actually permit the threatened injury to occur. Thursby v. Stewart, 103 Fla. 990, 138 So. 742 (1931); Godwin v. Phifer, 51 Fla. 441, 41 So. 597 (1906). In the present case, the ex parte order was secured when the threat of injury was immediate. The order was served on defendants after they actually had begun to commit the injury, which was occupation of the campus building. It clearly appears it would have been futile for the trial judge to attempt to give notice or schedule a hearing, since the injury already would have occurred. A preventive injunction should not be issued if the threatened injury already is complete. Drew Lumber Co. v. Union Inv. Co., 66 Fla. 382, 63 So. 836 (1913). The decision in the case sub judice does not conflict with Carroll v. President and Commissioners of Princess Anne, 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968) in which an ex parte injunction without notice was issued on the same day the threatened injury, a meeting or rally, was planned, and the Supreme Court invalidated the injunction, because there was no showing in the record that it would have been impossible to notify the defendant parties and give them an opportunity to participate. The case before us may be distinguished. The facts show it would have been impossible to give notice, since the threatened injury would have become complete, and under state law an injunction could not then have been issued.
The argument that appellee should have applied earlier to the court for an injunction in order to provide more time for notice and participation bears no weight. SDS might have called off the meeting, or moved it to the lawn, or gone to court to challenge the decision it chose to defy. We do not believe that a university or other agency, threatened with an injury which might not happen, is required to go to court at the earliest possible moment to secure an injunction. We conclude that a public agency, rather than being required to speculate as to what might happen, should be permitted to wait until the last opportunity to preserve the status quo, before invoking the extreme measures of the judicial process. A state agency, charged with a public trust, cannot be placed in the position where it must forfeit its right and power to restrain injury, if it chooses to wait until the fifty-ninth minute, while attempting to negotiate away or avoid the problem it faces.
The purpose of an injunction is not to take sides or to preserve a status quo which existed at some time prior to the controversy. Rather, as we stated in Bowling v. National Convoy & Trucking Co., 101 Fla. 634, 135 So. 541 (1931),
"[B]y the status quo which will be preserved by preliminary injunction is meant the last, actual, peaceable, noncontested *126 condition which preceded the pending controversy. * * *" (p. 544)
In the case sub judice, the pending controversy which appellee sought to avoid was the defiant and disruptive occupation of the Florida Room, and the status quo sought to be preserved was, as it should have been, the last, peaceable, uncontested condition preceding such confrontation and occupation.
The requirement of Rule 1.610(b) that a complaint must show irreparable injury is long-established law in Florida. See Charlotte Harbor & N. Ry. Co. v. Lancaster, 70 Fla. 200, 69 So. 720 (1915). In the case sub judice, appellee Marshall alleged that SDS planned to occupy the Florida Room for a rally and speaker despite its denial of recognition which would have entitled it to use of the room, and that SDS intentionally planned to disobey and defy the University, the Board of Regents, and to cause a confrontation. The complaint shows a planned, intentional, disobedience of valid rules with the intention of causing disruption and disturbance to the University.
It is argued by defendants that no irreparable injury is alleged to support the injunction, and that any injury which in fact might have occurred was susceptible to reparations by law. We disagree.
The State and its citizens, through their University and public school officials, have a valid interest in the orderly, peaceful, and nondisrupted operation of the University system. Actions which fall outside protected constitutional liberties, and which invade this valid state interest, are susceptible of being restrained, and the state is not restricted to after-the-fact punishment by administrative or criminal sanctions. Restraint may be imposed where necessary to preserve the safety and order of the campus community and prevent interference with pursuit of educational objectives; behavior susceptible of such restraint includes seizure of a portion of a campus building, and conduct which may without exaggeration be termed disruptive, contemptuous, defiant, highly visible and provocative, intended to bring about a confrontation, and carrying with it the virus of violence. However, the state's interest which may be protected must in every case be more than mere public desire, public demand, or public benefit, and must be grounded in genuine necessity for health, safety and welfare. Peavy-Wilson Lumber Co., Inc. v. Brevard County, 159 Fla. 311, 31 So.2d 483 (1947). The state's interest is not personal, but public, and it must be permitted to control the use of public facilities for the ends of public necessity. The duty of officials of state universities was well-stated by the District Court of Appeal, First District, in Woody v. Burns, 188 So.2d 56 (Fla.App.1, 1966) in ordering reinstatement of a suspended student, saying:
"Those charged with the administration of the state's institutions of higher learning * * * must determine the standard of behavior necessary to maintain discipline and general good conduct of the members of the student body as is essential to preserve high public regard * * * and to properly utilize the facilities and services which the universities are intended to provide." (p. 59)
We conclude that the University would have been irreparably injured were the confrontation continued and occupation of the Florida Room permitted, the injunction was properly issued, and that it was necessary that the defendants obey it unless their actions were shielded by constitutional liberties under the Florida or United States constitutions.
The injunction does no violence to Section 5, Article I, Florida Constitution, which reads as follows:
"The people shall have the right peaceably to assemble, to instruct their representatives, and to petition for redress of grievances."
As appellants were merely restrained from unlawfully occupying and unauthorizedly *127 using any building in defiance of the Rules of the University, their right to assemble, to hold a meeting or rally, or to express their views was not restrained.
The next question is whether the injunction infringed improperly on the liberty of speech guaranteed to citizens of this state by Article I, Declaration of Rights, § 4, Fla. Const. (1968).
Section 4, of the Declaration of Rights, is almost identical to Section 13, Declaration of Rights of the Constitution of 1885. We therefore adopt as authority under Section 4, of the 1968 Constitution, those cases which construed Section 13 of the 1885 Constitution.
The Declaration of Rights, Section 4, provides:
"Every person may speak, write and publish his sentiments on all subjects but shall be responsible for the abuse of that right. No law shall be passed to restrain or abridge the liberty of speech or of the press. * * *"
It is undisputed that the command that no law shall be passed also means that no order shall be issued and no regulation adopted in the name of the state which infringes on the liberty herein reserved to the people.
It is contended by defendants that the injunction infringes on their constitutional right of liberty of speech.
In Stoner v. South Peninsula Zoning Commission, 75 So.2d 831 (Fla. 1954), we recognized that exercise of a valid political right may not be restrained by injunction, and that no valid state interest was involved in preventing creation of a new community. We struck down the injunction. In a proper case, liberty of speech equally is susceptible of such protection.
Conflicts between actions by public officials and citizens attempting to exercise constitutionally-protected liberties of speech have not been infrequent in Florida. Examination of our cases reveals several balanced policies. Liberty of speech must be respected by public agents, even if the speech is angry, critical, adverse, or threatens to bring about economic harm, as in union activity. Unreasonable or improper infringements of this liberty cannot stand. State ex rel. Wilson v. Russell, 146 Fla. 539, 1 So.2d 569 (1941); Pittman v. Nix, 152 Fla. 378, 11 So.2d 791 (1943); State ex rel. Singleton v. Woodruff, 153 Fla. 854, 13 So.2d 704 (1943); Johnson et al. v. White Swan Laundry, Inc., 41 So.2d 874 (Fla. 1949). The exercise of liberty of speech in specific situations may be required to yield to valid state or local interests springing from public necessity. Smith v. Ervin, 64 So.2d 166 (Fla. 1953); State ex rel. Nicholas v. Headley, 48 So.2d 80 (Fla. 1950); Adams v. Sutton, 212 So.2d 1 (Fla. 1968); Ex Parte Hawthorne, 156 So. 619 (Fla. 1934); Satan Fraternity et al. v. Board of Public Instruction for Dade County et al., 156 Fla. 222, 22 So.2d 892 (1945); Oshins v. York, 150 Fla. 690, 8 So.2d 670 (1942); Jones v. Board of Control, 131 So.2d 713 (Fla. 1961); State v. Ucciferri, 61 So.2d 374 (Fla. 1952); Tampa Times Co. et al. v. City of Tampa, 29 So.2d 368 (Fla. 1947); In re Hayes, 72 Fla. 558, 73 So. 362 (1916); Nixon v. State, 178 So.2d 620 (Fla.App.3, 1965). Liberty of speech also must be balanced against other state constitutional policies, such as those involved in our defamation cases; or the right-to-work law. Local Union No. 519 of United Assn. of Journeymen and Apprentices of Plumbing and Pipefitting Industry of U.S. and Canada v. Robertson, 44 So.2d 899 (Fla. 1960). Not all places are suitable for expression of grievances or opinion under liberty of speech. Stephens et al. v. Stickel et al., 146 Fla. 104, 200 So. 396 (1941). Also see Adderly v. State of Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149, rehearing denied 385 U.S. 1020, 87 S.Ct. 698, 17 L.Ed.2d 559 (1966); National Association for the Advancement of Colored People v. Webb's City, 152 So.2d 179 (Fla.App. 2, 1963). An injunction is not justified because *128 the words spoken may be critical or unpleasant, or because on previous occasions there were improper incidents or confrontations if the incident subject to the order was lawful and orderly. Moore et al. v. City Dry Cleaners & Laundry, Inc., 41 So.2d 865 (Fla. 1949).
It is claimed in the case sub judice by appellants that their liberty of speech protects them from an injunctive order forbidding use of the Florida Room without permission. Recognizing, as we must, that the University permits other student organizations to use the room for meetings, if they are officially recognized, the question presented is not without difficulty. As the Supreme Court of California stated on somewhat similar facts,
"The state is under no duty to make school buildings available for public meetings. If it elects to do so, however, it cannot arbitrarily prevent any members of the public from holding such meetings. Nor can it make the privilege of holding them dependent on conditions that would deprive any members of the public of their constitutional rights."
Danskin v. San Diego Unified School Dist., 28 Cal.2d 536, 171 P.2d 885 (1946). Also, see Brooks v. Auburn University, 296 F. Supp. 188 (D.C. 1969).
We hold that a University in Florida need not open its campus buildings to student groups, but if it does so, it may not close such buildings to any students in violation of their constitutional rights, including liberty of speech.
Without deciding whether any student group could use campus buildings without permission, we conclude that in the circumstances of this case, denial of recognition of SDS appears to have been valid. Further, the order of the trial court denying the motion to dissolve the injunction also was valid. The injunction did not ban SDS from the Florida State University campus, but only from unpermitted occupation of buildings which, it may be presumed, have other legitimate uses not justifiably interrupted at the whim of a small group.
The interest of the state and its citizens in this situation is clear. As in any other community, rules must be made and generally followed for the convenience and safety of all. They must also be made and enforced within a campus community. Casual or indifferent disobedience to the law is not tolerated. Bad actions may be mitigated, but are not sanctified, by noble motives. The existence of serious local or national problems may be cause for action, but is not cause for striking the face or blocking exercise of valid rights of the nearest person who fails to agree and take up banners for a particular cause.
We should be gratified by the deep and passionate interest of our students today in the world and our country. An apathetic young American citizenry would be a tragedy. One that is alert, interested, and argumentative is a vital line of defense against the decline of our free institutions. But some cannot understand that he who flouts the law cannot be confident of the protection of any law.
Dissent is built into the policy of our constitution, but it must be contained within the framework of the constitutions. University officials are entitled  indeed, they have the unavoidable duty  to maintain campus order and discipline, to protect the campus from undue disruption and violence, and to pursue educational goals.
When the interest of SDS members in seizing a portion of a campus building in open defiance of known university regulations is balanced against the need of the university to maintain order and respect for fair rules, and its need to pursue educational goals without undue disturbance, it is apparent that the equities clearly lie with the university and that the activities *129 of SDS and its members fell beyond the limits of protected speech under our state constitution.
The question of whether the injunction infringes on freedom of speech and assembly guaranteed by the First Amendment to the United States Constitution, and extended to actions of state officials by the Fourteenth Amendment should also be considered. In taking up this question, our role is clear:
"The Constitution of the United States, within its limited sphere, is the supreme law of the land; and it is the duty of all officials, whether legislative, judicial, executive, administrative, or ministerial, to so perform every official act as not to violate the constitutional provisions.
"The duty rests upon all courts, state and national, to guard, protect, and enforce every right granted or secured by the Constitution of the United States, whenever such rights are involved in any proceeding before the court and the right is duly and properly claimed or asserted." Montgomery v. State, 55 Fla. 97, 45 So. 879, 881 (Fla. 1908).
Stephens v. Stickel, supra, (146 Fla. 104, 200 So. 396 (1941)), holds that, when the courts of this state are called upon to construe and apply the privileges and immunities clause of the United States Constitution,
"The organic command that no law shall restrain or abridge the liberty of speech * * * does not by its terms or intendments contemplate that the exercise of such liberty * * * shall be superior to reasonable duly authorized regulations * * *."
The court then held that the liberty of speech involved in distribution of religious literature to motorists at street intersections was subordinate to the state's interest in securing orderly traffic movement and efficient use of its streets.
There are many decisions of the Federal courts relating to freedom of speech under the Federal Constitution, and concerned with the rights of students or employees or public, relating to universities and schools. Underlying all these decisions is the fundamental principle that the absence of a valid state interest is fatal to a state action relating to exercise of fundamental freedom, and the existence of such an interest ordinarily will justify the limited and reasonable regulation of the exercise of such fundamental freedom.
This dichotomy underlies the companion orders, both filed July 21, 1966, of the United States Fifth Circuit Court of Appeals in Blackwell v. Issaquena County Board of Education, 363 F.2d 749, and Burnside v. Byars, 363 F.2d 744. Both cases involved school regulations forbidding students from wearing "freedom buttons" on school grounds during school hours. In Blackwell, the United States court found school regulations valid, on facts showing that students who wore the buttons were involved with disorderly actions, that they disrupted classroom activity, interfered with decorum and discipline, and disturbed other students who did not wish to wear the buttons. A contrary result was reached in Burnside, and the school regulations invalidated, on grounds that the students had a freedom of speech involved in wearing the buttons, and that there was no showing of disorder and school operations were not hampered. The cases appear to hold that reasonable regulations will be upheld if the actual facts show the need for such regulations to preserve discipline and order.
Both these cases were relied on by the United States Supreme Court, in Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) which held that First Amendment Freedom of Speech protected the wearing of black armbands by students and teachers, on school grounds and during school hours, since school authorities *130 did not have complete authority and students did retain fundamental rights of citizenship. The Court held that while on campus a student
"[M]ay express his opinions, even on controversial subjects like the conflict in Vietnam, if he does so without `materially and substantially interfering with the requirements of appropriate discipline in the operation of the school' and without colliding with the rights of others. Burnside v. Byars * * *. But conduct by the student, in class or out of it, which for any reason  whether it stems from time, place or type of behavior  materially disrupts classwork or involves substantial disorder or invasion of the rights of others is, of course, not immunized by the constitutional guarantee of freedom of speech. Cf. Blackwell v. Issaquenna County Board of Education * * *." (p. 740).
Counsel for appellant students relies heavily on Brooks v. Auburn University, supra, in which the Federal District Court for the Middle District of Alabama held that an unconcealed and invalid prior restraint on freedom of speech existed where Auburn University adopted regulations stating that student organizations could not invite speakers onto campus who might advocate breaking the law, or who previously had been convicted of a felony, or whose views the University might not approve or find acceptable. The Court held that a University President clothed with power to permit or deny on-campus appearance of speakers may not bar the way to any speaker except on a showing of a clear and present danger the speaker will break the law, and that all speakers invited by all student groups must be permitted to use facilities provided to some speakers invited by some student groups.
Although the decision of the District Court in the Auburn case would not be binding on this Court, its weight as authority is not lightly ignored. However, in the case sub judice we are faced with an injunction granted to prevent the occupation of a portion of a campus building, by a student organization whose denial of recognition has not been shown to be invalid, to hear a speaker whom the university neither approved nor disapproved, in circumstances which reveal calculated and deliberate efforts to publicly confront, embarrass, defy and challenge the university in the enforcement of its regulations.
For other important decisions relating to First Amendment freedoms and school authorities, see Steier v. New York State Education Commissioner, 271 F.2d 13 (1959) in which the Second Circuit Court of Appeals upheld dismissal of a student from Brooklyn College despite charges of malicious suspension and lack of due process; Dunmar v. Ailes, 121 U.S.App.D.C. 45, 348 F.2d 51 (1965) in which the Court of Appeals for the District of Columbia upheld dismissal of a student from an academy, finding procedures leading to dismissal did not violate due process minimum standards of fairness; Jones v. State Board of Education of Tennessee, 279 F. Supp. 190 (1968), in which the Federal District Court upheld denial of students of renewed opportunity to study, because of disruptive behavior the previous year, and following due process procedures; and Madera v. Board of Education of the City of New York, 267 F. Supp. 356 (1967) in which the Federal District Court's decision that a student expelled was entitled to representation by an attorney at dismissal proceedings was reversed by the Second Circuit, 386 F.2d 778 (1967) which held that due process fairness does not require assistance of counsel. Also see Golberg v. Regents of University of California, 248 Cal. App.2d 867, 57 Cal. Rptr. 463 (1967) in which the California First District Court of Appeal held that the Federal Constitution does not protect from dismissal students who engaged in campus rallies, criticized and disapproved the administration, by highly visible and provocative means, with the university possessed of inherent general power to dismiss in order to maintain order on campus; and In re Bacon, 240 Cal. App.2d *131 34, 49 Cal. Rptr. 322 (1966) in which the same court held that Federal constitutional freedoms did not shield students who were punished for unlawful assembly after they sat-in at a university building, after closing hours, and after they had been asked by the university chancellor to leave. Also see Zanders v. Louisiana State Board of Education, 281 F. Supp. 747 (1968) in which the Federal District Court held that Gramling College could expel students who blocked entries to a college building for 48 hours, paralyzing the university, but could not expel other students who did not actually take part in the barricading.
Other cases illuminating the state of Federal law are: West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943) in which a resolution requiring school children to salute the flag was held unconstitutional; Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965) in which convictions were reversed of students who marched from state house to court house to sing, pray and listen to a speech; Cox v. State of New Hampshire, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941), holding that a city may enforce a non-discriminatory regulation requiring a permit for a parade and designed to secure fees to offset parade costs; Adderly v. State of Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966) in which state prosecution of students trespassing on jail grounds was upheld, such being an inappropriate place for protest; Wasson v. Trowbridge, 382 F.2d 807 (1967) in which the Second Circuit held a cadet at the Merchant Marine Academy could not be expelled without due process; Dixon v. Alabama State Board of Education, 294 F.2d 150 (1961) in which the Fifth Circuit held a student could not be expelled from a state university without Federal constitutional due process; Woods v. Wright, 334 F.2d 369 (1964), in which the Fifth Circuit held that a school could not dismiss students with irreparable injury and without due process hearing where they had been arrested for violating a city ordinance; Davis v. Francois, 395 F.2d 730 (1968) in which the Fifth Circuit held invalid for overbreadth a municipal ordinance restricting picketing, noting that such may be restricted from a sensitive building by a properly drawn ordinance. See also Dickson v. Sitterson, 280 F. Supp. 486 (1968) in which the Federal District Court held invalid for vagueness a North Carolina law requiring state universities to regulate speakers coming onto campus; Esteban v. Central Missouri State College, 277 F. Supp. 649 (1967) in which it was held that suspended students were denied a fair due process hearing; Hammond v. South Carolina State College, 272 F. Supp. 947 (1967) holding invalid a college rule forbidding parades or demonstrations without prior college approval, and reversing a student's suspension; Connelly v. University of Vermont, 244 F. Supp. 156 (1965) which held the university could not dismiss a medical student on facts suggesting official bad faith or arbitrariness; Due v. Florida A. & M. University, 233 F. Supp. 396 (1963) in which the District Court held that the university had authority after due process hearing to dismiss students for misconduct, based on state court convictions; Knight v. State Board of Education, 200 F. Supp. 174 (1961) holding that students could not be suspended as a result of `freedom ride' activity under university misconduct rules without a due process fair hearing.
Under the Federal Constitution, the free exercise of First Amendment freedom may not be restrained absent a "clear and present danger" to a substantial governmental interest. Schenck v. United States, 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470 (1919). The need to maintain public decency and order may justify such a restraint. Chaplinsky v. State of New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942) (fighting words). The United States Supreme Court has held that First Amendment protections apply to the states through the Fourteenth Amendment. State laws restricting exercise of such federally-protected *132 freedoms must be narrowly-drawn, protect a valid state interest, and not fail for vagueness. Elfbrandt v. Russell, 384 U.S. 11, 86 S.Ct. 1238, 16 L.Ed.2d 321 (1966) (loyalty oath); Cramp v. Board of Public Instruction, Orange County, Florida, 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285 (1961) (loyalty oath); Bridges v. State of California, 314 U.S. 252, 62 S.Ct. 190, 86 L.Ed. 192 (1941) (prior restraint on news reports); Keyishian v. Board of Regents of the University of the State of New York, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967) (vagueness); Cantwell v. State of Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940) (prior restraint). The United States Supreme Court said in Cantwell:
"When clear and present danger appears of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order, appears, the power of the state to prevent or punish is obvious. Equally obvious is it that a state may not unduly suppress free communication of views * * * under the guise of conserving desirable conditions." (at 308, 60 S.Ct. at 905)
The Federal District Court for the Western District of Missouri, sitting en banc, took up the problem of students' rights and university authority, and adopted a "General Order on Judicial Standards of Procedure and Substance," reported at 45 F.R.D. 133. Speaking as to the obligations of a student, the Court said:
"Attendance at a tax supported educational institution of higher learning is not compulsory. The federal constitution protects the equality of opportunity of all qualified persons to attend. Whether this protected opportunity be called a qualified `right' or `privilege' is unimportant. It is optional and voluntary.
"The voluntary attendance of a student in such institutions is a voluntary entrance into the academic community. By such voluntary entrance, the student voluntarily assumes obligations of performance and behavior reasonably imposed by the institution of choice relevant to its lawful missions, processes, and functions. These obligations are generally much higher than those imposed on all citizens by the civil and criminal law. So long as there is no invidious discrimination, no deprival of due process, no abridgement of a right protected in the circumstances, and no capricious, clearly unreasonable or unlawful action employed, the institution may discipline students to secure compliance with these higher obligations as a teaching method or to sever the student from the academic community.
"No student may, without liability to lawful discipline, intentionally act to impair or prevent the accomplishment of any lawful mission, process, or function of an educational institution." (p. 141)
The views expressed and the conclusions which are reached in the case sub judice, are further bolstered by comments in 22 Vanderbilt Law Review 1027 (Oct. 1969), 13 South Dakota Law Review 96 (Winter 1968), 42 Tulane Law Review 394 (Feb. 1968), and 56 Virginia Law Review 215 (March 1970).
It necessarily follows that the order of the Circuit Court denying the motion to dissolve the temporary injunction should be and is hereby
Affirmed.
ROBERTS, Acting C.J., and DREW, CARLTON and BOYD, JJ., concur.