QUESTION: Is the Council of Deans Committee at the University of South Florida subject to the Government in the Sunshine Law?
SUMMARY: An organization such as the Council of Deans is under the purview of the Sunshine Law. The Council of Deans is composed of the nine college deans and the vice president for academic affairs. The president of the university appoints the council and empowers it to make decisions. The president continues to have final authority. All decisions which are approved by the president have been accepted by the Board of Regents unless they conflict with regulations adopted by the board. The council meets in regularly scheduled sessions to review policies and proposals concerning, inter alia, academic operation of the university. It seems that the council has participated in decisions concerning such things as basic study requirement, establishment of academic grievance committees, whether course information should be available to students prior to registration, and the number of ungraded courses a student may take. Apparently, also, the decision of the council has a great deal of weight with the president of the university. The council claims that it is not subject to the Sunshine Law because it is merely an advisory committee. However, in the recent decision of Town of Palm Beach v. Gradison, 296 So.2d 473 (Fla. 1974) rehearing denied, July 10, 1974, the Florida Supreme Court held that an advisory body, i.e., a planning commission composed of private citizens which was appointed and established by a governmental agency, is subject to the provisions of the Sunshine Law. As noted by Chief Justice Adkins in Town of Palm Beach at 477, One purpose of the government in the sunshine law was to prevent at nonpublic meetings the crystallization of secret decisions to a point just short of ceremonial acceptance. Rarely could there be any purpose of a nonpublic premeeting conference except to conduct some part of the decisional process behind closed doors. The statute should be construed so as to frustrate all evasive devices. This can be accomplished only by embracing the collective inquiry and discussion stages within the terms of the statute, as long as such inquiry and discussion is conducted by any committee or other authority appointed and established by a governmental agency, and relates to any matter on which foreseeable action will be taken. (Emphasis supplied.) Likewise, the recommendations made by the Council of Deans to the university president constitute an important part of the decisionmaking process. These policies which relate primarily to the academic operation of the university are often heavily relied upon by the university president. Significantly, these are the only meetings at which input from the university committee can be heard and considered before final action is taken. Since the matters upon which the council acts are such as would appropriately be considered by the president or, in cases where a proposal is approved, by the Board of Regents, such meetings clearly relate to matters "on which foreseeable action will be taken" and, hence, must be held in the sunshine. Copies of minutes of council meetings reflect that the council has acted and made recommendations upon subjects on which foreseeable action would or had been taken by the Board of Regents. For example, policies and procedures relating to tenure and promotion procedures (B.O.R. Op. Manual, 2-14), unemployment compensation benefits and workmen's compensation (B.O.R. Op. Manual, 2-14), sponsored research projects (B.O.R. Op. Manual, 2-45), granting of academic credit for cooperative education (B.O.R. Op. 2-75 and 2-75), equal opportunity hiring and recruitment (B.O.R. Manual, 2-79), extension of the ninety-hour rule to community colleges (B.O.R. Articulation Agreement), compilation of data for the C.L.E.P. validation study (B.O.R. Amendment to the Articulation Agreement, approved by the Board of Regents, Sept. 11, 1972, and the State Board of Education, Sept. 19, 1972), are but a few of the agenda items discussed or acted upon by the council which relate directly to matters which are the ultimate responsibility of the Board of Regents. The Sunshine Law regulates meetings of the board or commission of any state agency. A state university has been held to be a public (or state) agency. Lieberman v. Marshall, 236 So.2d 120 (Fla. 1970). It also cannot be denied that the Board of Regents is a state agency subject to the Sunshine Law. "The Legislature intended to extend application of the `open meeting' concept so as to bind every board or commission of the state or of any county or political subdivision over which it has dominion and control." Miami Beach v. Berns, 245 So.2d 38, 40
(Fla. 1971). The Board of Regents is given its authority and duties by the legislature. The board of regents of the division of universities of the department of education is granted the necessary powers to govern, regulate, coordinate, and oversee the institutions and agencies in the state university system in order to attain the most effective accomplishment of the lawful aims of education. Section 240.001(1), F.S. The intent of the legislature, as found in s. 240.001(2), F.S., is . . . that the board shall be primarily a policy-making board, establishing the policies of the state university system by rules and regulations adopted by it for the lawful aims of education . . . . The Board of Regents is authorized and empowered to . . . approve the programs of instruction and the different branches of learning to be offered and maintained at each of the several institutions, and to alter and change the same. Section 240.042(2)(g), F.S. The operation of the state university system is theoretically the responsibility of the Board of Regents. The board has delegated some of its authority to the president of the individual universities pursuant to the provisions of ss. 240.001(2) and 240.042(1), F.S., for the purpose of a more efficient method of operation. It should be kept in mind that the Board of Regents shall "[a]pprove instructional programs and educational services to be offered in each of the institutions." Section 1, 1.1(f) Board of Regents Operating Manual. And, "[a]ll proposals for new programs shall require the approval of the Board of Regents." Section 2, 4.1 Board of Regents Operating Manual.
It is axiomatic that a body cannot do indirectly that which it cannot do directly. The Board of Regents must act in the sunshine. When its authority is, in essence, delegated to and carried out by the council of deans, the council, too, must follow the dictates of the law. There is no "government by delegation" exception. I.D.S. Properties, Inc. v. Town of Palm Beach, 279 So.2d 353, 356
(4 D.C.A. Fla., 1973). The council is a duly appointed group which provides the best, if not the only, opportunity for members of the university community to have a say in and to understand the functioning and decision-making processes of the university. The approval of the president and board is often perfunctory. The fact that the council reports to an individual — the president — makes no difference in determining whether it comes under the Sunshine Law, for certain of its recommendations, if approved by the president, must further be approved by the Board of Regents, an agency clearly under the Sunshine Law. If the council does not approve any given proposal, the proposal, in effect, dies at this point — without any opportunity for public participation and input.